## General Civil and Domestic Relations Case Filing Information Form

⚖ EFILED IN OFFICE
CLERK OF SUPERIOR COURT
HOUSTON COUNTY, GEORGIA

**2025V132864L**

AUG 26, 2025 07:44 AM

*Terri L Childers*
Terri Childers, Clerk of Superior Court
Houston County, Georgia

☑ **Superior** or ☐ **State Court of** Houston          **County**

| For Clerk Use Only | |
|---|---|
| **Date Filed** 08-26-2025 | **Case Number** 2025V132864L |
| **MM-DD-YYYY** | |

**Plaintiff(s)**

ETIENNE SEVERE, MARIE M

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|
| Last | First | Middle I. | Suffix | Prefix |
| Last | First | Middle I. | Suffix | Prefix |
| Last | First | Middle I. | Suffix | Prefix |

**Defendant(s)**

STATE FARM FIRE AND CASUALTY COMPANY

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|
| Last | First | Middle I. | Suffix | Prefix |
| Last | First | Middle I. | Suffix | Prefix |
| Last | First | Middle I. | Suffix | Prefix |

**Plaintiff's Attorney** Brown, Shandria          **Bar Number** 756215          **Self-Represented** ☐

### Check one case type and, if applicable, one sub-type in one box.

**General Civil Cases**

- ☐ Automobile Tort
- ☐ Civil Appeal
- ☑ Contract
- ☐ Contempt/Modification/Other Post-Judgment
- ☐ Garnishment
- ☐ General Tort
- ☐ Habeas Corpus
- ☐ Injunction/Mandamus/Other Writ
- ☐ Landlord/Tenant
- ☐ Medical Malpractice Tort
- ☐ Product Liability Tort
- ☐ Real Property
- ☐ Restraining Petition
- ☐ Other General Civil

**Domestic Relations Cases**

- ☐ Adoption
- ☐ Contempt
  - ☐ Non-payment of child support, medical support, or alimony
- ☐ Dissolution/Divorce/Separate Maintenance/Alimony
- ☐ Family Violence Petition
- ☐ Modification
  - ☐ Custody/Parenting Time/Visitation
- ☐ Paternity/Legitimation
- ☐ Support – IV-D
- ☐ Support – Private (non-IV-D)
- ☐ Other Domestic Relations

☐ Check if the action is related to another action(s) pending or previously pending in this court involving some or all of the same parties, subject matter, or factual issues. If so, provide a case number for each.

_____          _____
**Case Number**                          **Case Number**

☑ I hereby certify that the documents in this filing, including attachments and exhibits, satisfy the requirements for redaction of personal or confidential information in O.C.G.A. § 9-11-7.1.

☐ Is a foreign language or sign-language interpreter needed in this case? If so, provide the language(s) required.

_____ **Language(s) Required**

☐ Do you or your client need any disability accommodations? If so, please describe the accommodation request.

_____
_____

**EXHIBIT A**

**IN THE SUPERIOR COURT OF HOUSTON COUNTY
STATE OF GEORGIA**

EFILED IN OFFICE
CLERK OF SUPERIOR COURT
HOUSTON COUNTY, GEORGIA

**2025V132864L**

**AUG 26, 2025 07:44 AM**

*Terri L Childers*
Terri Childers, Clerk of Superior Court
Houston County, Georgia

CIVIL ACTION NUMBER  <u>2025V132864L</u>

ETIENNE SEVERE, MARIE M
_____

**PLAINTIFF**

**VS.**

STATE FARM FIRE AND CASUALTY
COMPANY
_____

**DEFENDANT**

**SUMMONS**

TO: STATE FARM FIRE AND CASUALTY COMPANY

        You are hereby required to file with the Clerk of said court and serve upon the plaintiff or plaintiff's attorney, whose name, address and email address are:

> **Shandria Brown**
> **Your Insurance Attorney**
> **3384 Peachtree Road**
> **Suite 250**
> **Atlanta, Georgia 30326**
> **Sbrown@yourinsuranceattorney.com**

an answer to the complaint which is herewith served upon you. You must make your answer within 30 days after service of this summons upon you. This time excludes the day of service. If you fail to answer, the court will issue a default judgment against you for the relief sought in the complaint.

        If this action pertains to a Protective Order, the answer is to be filed and served on or before the scheduled hearing date attached.

**This 26th day of August, 2025.**

                                Clerk of Superior Court


*Terri L Childers*
_____
Terri Childers, Clerk of Superior Court
Houston County, Georgia

**EFILED IN OFFICE**
CLERK OF SUPERIOR COURT
HOUSTON COUNTY, GEORGIA

**2025V132864L**

**AUG 26, 2025 07:44 AM**

*Terri L Childers*

Terri Childers, Clerk of Superior Court
Houston County, Georgia

## IN THE SUPERIOR COURT OF HOUSTON COUNTY
## STATE OF GEORGIA

| | |
|---|---|
| MARIE M ETIENNE SEVERE, | **CIVIL ACTION FILE NO:** |
| **Plaintiff,** | |
| **vs.** | **JURY TRIAL DEMAND** |
| STATE FARM FIRE AND CASUALTY | |
| COMPANY, | |
| **a foreign corporation,** | |
| **Defendant.** | |

## COMPLAINT

**COMES NOW** Plaintiff, MARIE M ETIENNE SEVERE (the "Insured"), by and through undersigned counsel, and files this Complaint for breach of first party property insurance contract and bad faith denial of insurance coverage against Defendant, STATE FARM FIRE AND CASUALTY COMPANY (the "Insurance Company"), and in support hereof, states as follows:

### PARTIES

#### 1.

The Insured is a citizen of Houston County, Georgia, and is the owner of the real property located at <u>500 Arbor Lane, Centerville, Georgia 31028</u> (the "Property" or the "home."), which is the subject of this action.

#### 2.

The Defendant is a foreign company and is registered with the State of Georgia's Secretary of State, to transact business in the State of Georgia, and to engage in any lawful activity for

corporations organized under the laws of the State of Georgia. The Insurance Company maintains an office at c/o 2 Sun Court, Suite 400, Peachtree Corners, GA, 30092 where it may be served with process through its registered agent, Corporation Service Company, as identified by the state of Georgia Secretary of State registry.

## JURISDICTION AND VENUE

### 3.

This Court has subject matter jurisdiction over this action pursuant to O.C.G.A. § 15-6-8. The Court has personal jurisdiction over the Insurance Company pursuant to O.C.G.A. §9-10-91 because: 1) the Defendant conducts business in the State of Georgia by insuring properties in the State of Georgia, including insuring the property in question 2) the Defendant has purposefully availed itself of a registered agent with the Secretary of State for service of process in Georgia pursuant to O.C.G.A. § 33-4-1 and O.C.G.A. § 33-4-4.

### 4.

Venue is proper in this Court because the Insurance Company has insured properties in Houston County, Georgia and said subject property resides in Houston County, Georgia where the cause of action arose pursuant O.C.G.A. § 14-2-510.

## THE POLICY

### 5.

Plaintiff purchased an insurance policy from Defendant, Policy No. 11-KF-L323-2, which provided coverage for the real property located at 500 Arbor Lane, Centerville, Georgia 31028. See **Exhibit "A"** (the "Policy").

**6.**

Accordingly, under the terms of the Policy, the Insurance Company agreed to provide insurance coverage to the Insured's property against sudden and accidental direct physical loss.

## DAMAGE TO THE INSURED PROPERTY

**7.**

On, or about, August 30, 2024, while the Policy was in full force and effect, the Property sustained a covered loss as a result of windstorm (the "Loss").

**8.**

The Insured submitted a claim to the Insurance Company for coverage due to the Loss that was suffered.

**9.**

The Insured promptly and timely notified the Insurance Company of the damage to the home and made a claim pursuant to the Policy. As a result, the Insurance Company assigned Claim Number 11-73H4-40C to the Loss and assigned an agent to investigate the Insured's claim for damage. The adjuster was authorized as the Insurance Company's representative and agent for the purposes of the Loss.

**10**.

At all times material hereto, the Insured fully cooperated and the Property at issue was made available to the Insurance Company and its representatives to inspect and investigate the Loss.

**11.**

The Insurance Company, through its authorized representative and agent, performed a site inspection of the Insured's home.

**12.**

The Insurance Company's authorized representative and agent incurred the duty of acting with due diligence in achieving a proper disposition of the Insured's claim when they undertook the handling of the claim.

**13.**

On or about September 23, 2024, The Insurance Company, through its authorized representative and agent, breached the Policy by wrongfully denying coverage for the Loss which was covered by the Policy.

**14.**

After diligent inspection of the Loss, it was obvious that the Property sustained covered damages that were not acknowledged by the Insurance Company.

**15.**

As a result of the Insurance Company's failure to adequately adjust the Loss, the Insured requests a re-evaluation of the claim. As of the time of this filing, the Insurance Company has failed to fully indemnify the Insured for the Loss.

**16.**

The Insurance Company did not act fairly and honestly toward the Insured with due regard for the claim when the Insurance Company failed to adequately compensate the Insured for the entire Loss. This is in direct breach of the terms and conditions of the Policy when under all of the circumstances, it could and should have done so, had it acted fairly and honestly toward its Insured and with due regard for their interests.

**17.**

All contractual obligations under the Policy and conditions precedent to the filing of this lawsuit have occurred, have been waived or have been performed.

**18.**

There exists a genuine, justifiable controversy between the Insured and the Insurance Company as to whether the Insurance Company is responsible for coverage for the replacement cost of the actual physical damage to the Property caused by the Loss. The Insured has exhausted all reasonable means possible to resolve this dispute with the Insurance Company. With no other option, the Insured was constrained to hire legal counsel, incurring additional expenses, and filing of this lawsuit.

**19.**

The Insured has suffered physical damage to the Property in an amount to be determined at trial but will not exceed the amount of $74,999.00.

## COUNT I

### *BREACH OF CONTRACT*

**20.**

The Insured adopts, re-alleges, and incorporates the allegations set forth in Paragraphs 1-19 of this Complaint as if fully set forth herein.

**21.**

At all times material hereto, the Insured has satisfied all post-loss obligations to the best of their ability in accordance with the Policy. This includes but is not limited to: timely payment of premiums; timely notice of the claim; and protecting the Property from further damage.

**22.**

The Defendant is required to compensate the Insured for all direct physical losses under the terms of the Policy.

**23.**

Despite the Insured's timely written demand that the Defendant pay the covered losses, the Defendant has frivolously and baselessly failed to acknowledge that additional payment would be forthcoming, and it has failed to adequately provide coverage under the terms of the Policy. As a result of the foregoing, the Defendant has breached the Policy causing further delay in restoring the Property to its pre-loss condition.

**24.**

The Defendant has failed to act in good faith and fair dealing under the terms of the Policy by refusing to properly investigate and pay the Loss according to the terms of the Policy.

**25.**

The Defendant has used the tactic of denying compensation to the Plaintiff for covered losses that were sustained due to the damage. Further, the Defendant has used the tactic of denying payment to the Insured to misrepresent the language of the Policy.

**26.**

As a result of the Defendant's tactic of denying and delaying the Insured's claim, the Insured has sustained damage to the Property in an amount to be determined at trial. In addition, the Insured has further covered losses from mitigation and temporary repairs in an amount to be determined at trial.

**27.**

As a direct and proximate result of the Defendant's breach of the Policy, the Insured has sustained, and continues to suffer, significant damages.

**28.**

All of the foregoing conduct constitutes a breach of contract that has resulted in damages to the Insured.

**29.**

**WHEREFORE,** the Insured prays for this Court to enter an award in their favor for compensatory damages, attorneys' fees, pre-judgment and post-judgment interest, and such other and further relief as the Court may deem just and proper.

## COUNT II

### *BAD FAITH*

**30.**

The Insured adopts, realleges, and incorporates the allegations set forth in Paragraphs 1 - 29 of this Complaint as if fully set forth herein.

**31.**

The Defendant has acted frivolously and without a reasonable basis or justification in contravention of its duty of good faith and fair dealing to achieve a proper disposition of the Insured's claim.

**32.**

The Defendant has not attempted in good faith to settle the Insured's claim when, under all the circumstances it could and should have done so had it acted fairly and honestly toward the Plaintiff and with due regard for their interests, namely, but not limited to:

(1) Knowingly misrepresenting claimants and insureds relevant facts or policy provisions relating to coverages at issue. <u>See</u> O.C.G.A. § 33-6-34(1);

(2) Failing to acknowledge with reasonable promptness pertinent communications with respect to claims arising under its policies. <u>See</u> O.C.G.A. § 33-6-34(2);

(3) Failing to adopt and implement procedures for the prompt investigation and settlement of claims arising under its policies. <u>See</u> O.C.G.A. § 33-6-34(3);

(4) Not attempting in good faith to effectuate prompt, fair, and equitable settlement of claims submitted in which liability has become reasonable clear. <u>See</u> O.C.G.A. § 33-6-34(4);

(5) Compelling insureds or beneficiaries to institute suits to recover amounts due under its policies by offering substantially less than the amounts ultimately recovered in suits brought by them. <u>See</u> O.C.G.A. § 33-6-34(5);

(6) Refusing to pay claims without conducting a reasonable investigation. <u>See</u> O.C.G.A. § 33-6-34(6);

(7) When requested by the Insured in writing, failing to affirm or deny coverage of claims within a reasonable time after having completed its investigation related to such claim or claims. <u>See</u> O.C.G.A. § 33-6-34(7); and

(8) When requested by the Insured in writing, failing in the case of claim denial or offers of compromise settlement to provide promptly a reasonable and accurate explanation of the basis for such action. In the case of claims denials, such denials shall be in writing. <u>See</u> O.C.G.A. § 33-6-34(10).

**33.**

The above and foregoing actions of the Defendant give rise to a cause of action for bad faith as the Defendant has frivolously and without a reasonable basis refused to pay the Insured's covered Loss within sixty (60) days after the Insured's timely written demand for payment according to O.C.G.A § 33-4-6. See **Exhibit "B"** (the "Demand").

**34.**

The Defendant has frivolously and without a reasonable basis used the tactic of denying compensation to the Insured for a covered Loss. Further, the Defendant has frivolously and without a reasonable basis used the tactic of delaying payment to misrepresent the language of the Policy.

**35.**

The Defendant's refusal to pay the Insured's covered losses was done frivolously, without a reasonable basis, and otherwise, in bad faith.

**36.**

As a result of the Defendant's breach of the Policy and continuous refusal to adequately indemnify the Insured. the Defendant acted in bad faith. Pursuant to O.C.G.A. § 33-4-6, the Insured is entitled to all damages, whether foreseeable or not, that are a direct result of the Defendant's intentional failure to perform, including a penalty of an additional fifty percent (50%) of the value of the claim, attorneys' fees, and the Insured's consultant and expert fees.

**37.**

Pursuant to O.C.G.A. § 33-4-6, the Defendant is obligated to pay any amounts owed to the Insured within sixty (60) days of receipt of formal demand and has failed to do so. As a result of that frivolous failure - which was arbitrary, capricious, and without a reasonable basis -

the Defendant is liable for all amounts due under its respective policy plus fifty percent (50%).

**38.**

Pursuant to O.C.G.A. § 33-4-6, the Defendant owed the Insured Plaintiff a duty of good faith and fair dealing and had an affirmative duty to adjust the Loss fairly and promptly and to make a reasonable effort to settle claims with the Insured when, under all the circumstances it could and should have done so had it acted fairly and honestly. Because the Defendant has breached these duties, it is liable to the Insured for all damages as a result of the breach, including but not limited to those specified in O.C.G.A. § 33-4-6.

**39.**

Pursuant to O.C.G.A. § 33-4-6, the Defendant breached its duty of good faith and fair dealing and its affirmative duty to adjust claims fairly and promptly when it failed to fully cover the damages and refused to conduct a reasonable investigation of the Insured's claim. Moreover, such failure was arbitrary, capricious, and without probable cause.

**40.**

As a result, pursuant to O.C.G.A. § 33-4-6, Defendant is liable for penalties in the amount of "not more than fifty percent (50%) of the liability of the insurer for the loss, or $5000, whichever is greater, and all reasonable attorneys' fees for the prosecution of the action against the Insurer." The Insured is entitled, in addition to its covered losses set forth herein, to a statutory award of reasonable attorneys' fees in prosecuting this action, along with a statutory award in an amount of fifty percent (50%) of the total compensatory damages awarded or $5,000, whichever is greater, under O.C.G.A. § 33-4-6 for the Defendant's unfair claims settlement practices and bad faith refusal to pay the Insured's Loss when it could and should have

done so, had it acted fairly and reasonably toward the Insured.

## DEMAND FOR JURY TRIAL

### 41.

Plaintiff hereby requests a trial by Jury on all counts of the Complaint.

## PRAYER FOR RELIEF

### 42.

**WHEREFORE,** the Insured requests that after due proceedings are had, all appropriate penalties be assessed against the Defendant and that the Insured receive any and all damages at law to which it is justly entitled, and thus prays for judgment against the Defendant as follows:

a. That this Court grant judgment in favor of the Plaintiff and against Defendant in an amount to be determined at trial for breach of insurance contract.

b. Compensatory damages, including all damages to the Plaintiff by the Defendant and any resulting expenses and temporary repairs.

c. Bad faith damages in an amount of fifty percent (50%) of the total compensatory damages awarded or $5,000, whichever is greater, for Defendant's bad faith delay, denial, and its intentional, frivolous failure to conduct a reasonable investigation of the Plaintiff claim without a reasonable basis;

d. Plaintiff's attorneys' fees and costs in this action;

e. Plaintiff's consultant and expert fees;

f. Pre-judgment and post-judgment interest in the maximum amount allowed by law;

g. All statutory penalties;

h. Any and all applicable multipliers; and,

i. Any and all other relief that the Court may deem just and proper, whether such relief

sounds in law or equity.

Dated this 26th day of August 2025.

**Respectfully Submitted by,**

**Your Insurance Attorney, PLLC.**

*/s/ Shandria Brown*
Shandria Brown, Esq.
Georgia Bar No. 756215
3384 Peachtree Rd NE, Suite 250
Atlanta, GA 30326
P: 888-570-5677
D: 678-830-2182
F: 888-881-1075
Email: yiaga5@yourinsuranceattorney.com
*Attorney for Plaintiff*

**State Farm Fire and Casualty Company**
*A Stock Company With Home Offices in Bloomington, Illinois*

Po Box 2356
Bloomington IL 61702-2356

EXHIBIT "A"



AT3            H-27-3006-FBB6  F  H  W
                         3201
ETIENNE SEVERE, MARIE M
500 ARBOR LN
CENTERVILLE GA  31028-8606

## DECLARATIONS

**AMOUNT DUE:**                              None

Payment is due by  **BILLED THRU SFPP**

**Policy Number:**   11-KF-L323-2

**Policy Period:**   12 Months
**Effective Dates:** JAN 1 2024  to JAN 1 2025
The policy period begins and ends at 12:01 am standard
time at the residence premises.

**HOMEOWNERS POLICY**

**Location of Residence Premises**
500 ARBOR LN
CENTERVILLE GA  31028-8606

**Your State Farm Agent**
NATHAN POOLE
104 WHITING WAY STE 100
WARNER ROBINS GA  31088-8054

Phone: (478) 333-2088

**Construction:**        Frame
**Year Built:**          2007

**Roof Material:**  Composition Shingle
**Roof Installation Year:**   2021

**Automatic Renewal**
If the **POLICY PERIOD** is shown as **12 MONTHS,** this policy will be renewed automatically subject to the premiums, rules, and forms in effect for each succeeding policy period. If this policy is terminated, we will give you and the Mortgagee/Lienholder written notice in compliance with the policy provisions or as required by law.

**PREMIUM**

Annual Premium                                                        $  2,553.00
*Your premium has already been adjusted by the following:*
Home/Auto
Claim Record

**Total Premium**                                                     **$  2,553.00**

Prepared   JAN 04 2024                                                Page 1 of 3
HO-2000
004048  160  I
N    1S,TG

(o1F1080B)  04-04-2016

**StateFarm**®

| NAMED INSURED | MORTGAGEE AND ADDITIONAL INTERESTS |
|---|---|
| ETIENNE SEVERE, MARIE M | |

## SECTION I - PROPERTY COVERAGES AND LIMITS

| Coverage | Limit of Liability |
|---|---|
| A Dwelling | $ 796,000 |
| Other Structures | $ 79,600 |
| B Personal Property | $ 597,000 |
| C Loss of Use | $ 238,800 |
| Fungus (including Mold) Limited Coverage | $ 10,000 |

**Additional Coverages**

| | |
|---|---|
| Arson Reward | $1,000 |
| Credit Card, Bank Fund Transfer Card, Forgery, and Counterfeit Money | $1,000 |
| Debris Removal | Additional 5% available/$1,000 tree debris |
| Fire Department Service Charge | $500 per occurrence |
| Fuel Oil Release | $10,000 |
| Locks and Remote Devices | $1,000 |
| Trees, Shrubs, and Landscaping | 5% of Coverage A amount/$750 per item |

## SECTION II - LIABILITY COVERAGES AND LIMITS

| Coverage | Limit of Liability |
|---|---|
| L Personal Liability (Each Occurrence) | $ 300,000 |
| Damage to the Property of Others | $ 1,000 |
| M Medical Payments to Others (Each Person) | $ 1,000 |

## INFLATION

Inflation Coverage Index: 319.3

## DEDUCTIBLES

| Section I Deductible | Deductible Amount |
|---|---|
| All Losses | $ 5,000 |

## LOSS SETTLEMENT PROVISIONS

A1 Replacement Cost - Similar Construction
B1 Limited Replacement Cost - Coverage B

JAN 04 2024

a1F0081A

HO-2000

**11-KF-L323-2**

**State Farm®**

## FORMS, OPTIONS, AND ENDORSEMENTS

| | |
|---|---|
| HW-2111 | Homeowners Policy |
| HO-2231.2 | Amendatory Endorsement |
| HO-2584 | Fungus (Incl Mold) Limited Cov |
| HO-2465 | Fungus (Incl Mold) Liability |
| HO-2444.2 | Back-Up Of Sewer Or Drain - |
| | 10% of Coverage A/$ 79,600 |
| Option JF | Jewelry and Furs $1,500 Each |
| | Article/$2,500 Aggregate |
| Option ID | Increase Dwlg Up to $  159,200 |
| Option OL | Ordinance/Law  10%/$  79,600 |

## ADDITIONAL MESSAGES

State Farm® works hard to offer you the best combination of price, service, and protection. The amount you pay for homeowners insurance is determined by many factors such as the coverages you have, the type of construction, the likelihood of future claims, and information from consumers reports.

You have the right to request, no more than once annually, that your policy be re-rated using a current credit-based insurance score. Re-rating could result in a lower rate or no change in rate.

**Other limits and exclusions may apply - refer to your policy**

Your policy consists of these Declarations, the Homeowners Policy shown above, and any other forms and endorsements that apply, including those shown above as well as those issued subsequent to the issuance of this policy.

This policy is issued by the State Farm Fire and Casualty Company.

**Participating Policy**

You are entitled to participate in a distribution of the earnings of the company as determined by our Board of Directors in accordance with the Company's Articles of Incorporation, as amended.

In Witness Whereof, the State Farm Fire and Casualty Company has caused this policy to be signed by its President and Secretary at Bloomington, Illinois.

Secretary

President

Prepared   JAN 04 2024
HO-2000
004049   160
N

HO-2231.2
Page 1 of 3

## HOMEOWNERS AMENDATORY ENDORSEMENT (Georgia)

This endorsement modifies insurance provided under the HOMEOWNERS POLICY



### DEFINITIONS

Under the definition of "***business***", item d. is replaced by the following:

***Business*** does not include:

d.  the ownership, maintenance, or use of systems and equipment used to generate electrical power, if:

   (1)  the power generated is intended primarily for consumption on the ***residence premises***; and

   (2)  any resulting income is incidental, including but not limited to:

      (a)  utility bill credits; or

      (b)  incidental income;

      derived from sending excess power back to the electricity grid; or

The definition of "***occurrence***" is replaced by the following:

"***occurrence***", when used in Section II of this policy, means an accident, including accidental exposure to conditions, which first results in:

a.  ***bodily injury***; or

b.  ***property damage***;

during the policy period. All ***bodily injury*** and ***property damage*** resulting from one accident, series of related accidents, or from continuous or repeated exposure to the same general conditions is considered to be one ***occurrence***.

### SECTION I – PROPERTY COVERAGES

### COVERAGE A – DWELLING

Item 3.c. is replaced by the following:

c.  systems and equipment used to generate electrical power, unless:

   (1)  the power generated is intended primarily for consumption on the ***residence premises***; and

   (2)  any resulting income is incidental, including but not limited to:

      (a)  utility bill credits; or

      (b)  incidental income;

      derived from sending excess power back to the electricity grid.

### SECTION I – ADDITIONAL COVERAGES

The following is added to **Volcanic Action**:

When applicable, the following coverages apply to a loss covered by **Volcanic Action**:

a.  **COVERAGE C – LOSS OF USE**;

b.  **SECTION I – ADDITIONAL COVERAGES**; and

c.  **Option OL – Building Ordinance or Law**, only if this option is shown in the ***Declarations***.

The following is added to **Collapse**:

When applicable, the following coverages apply to a loss covered by **Collapse**:

a.  **COVERAGE C – LOSS OF USE**;

b.  **SECTION I – ADDITIONAL COVERAGES**; and

c.  **Option OL – Building Ordinance or Law**, only if this option is shown in the ***Declarations***.

The following is added to **Fuel Oil Release**:

When applicable, the following coverages apply to a loss covered by **Fuel Oil Release**:

a.  **COVERAGE C – LOSS OF USE**;

b.  **SECTION I – ADDITIONAL COVERAGES**; and

c.  **Option OL – Building Ordinance or Law**, only if this option is shown in the ***Declarations***.

Any payments made for these coverages are included in, and not in addition to, the $10,000 limit of insurance for **Fuel Oil Release**.

### SECTION I – LOSSES NOT INSURED

**Intentional Losses** is replaced by the following:

**Intentional Losses.** If any ***insured*** intentionally causes or procures a loss to property covered under this policy, ***we*** will not pay any ***insured*** for this loss. This applies regardless of whether the ***insured*** is charged with or convicted of a crime.

This does not apply to:

a.  an ***insured*** who did not participate in, cooperate in, or contribute to causing or procuring the loss; or

b.  a claim of an innocent ***insured***, to the extent of the innocent ***insured's*** interest in the covered property, if the loss:

   (1)  arises out of family violence or sexual assault against an innocent ***insured***; and

   (2)  is caused by an intentional act of an ***insured*** against whom a family violence or sexual assault complaint is brought.

### SECTION I – CONDITIONS

Under **Mortgagee Clause**, paragraph 10.c. is replaced by the following:

c.  If ***we*** cancel this policy, the mortgagee will be notified at least 10 days before the date cancellation takes effect.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2021

ST-2C
04/06-2024

HO-2231.2
Page 2 of 3

**SECTION II – LIABILITY COVERAGES**

**SECTION II – ADDITIONAL COVERAGES**

The following is added to **Damage to Property of Others**:

    d.  Under **SECTION II – EXCLUSIONS**, exclusion 2.c. does not apply to the coverage provided by **Damage to Property of Others**.

**SECTION II – EXCLUSIONS**

Under **SECTION II – EXCLUSIONS**, 1.o. is replaced by the following:

    1.  Coverage L and Coverage M do not apply to:

       o.  *bodily injury* or *property damage* arising out of the ownership, maintenance, or use of systems and equipment used to generate electrical power, unless:

          (1)  the power generated is intended primarily for consumption on the *residence premises*; and

          (2)  any resulting income is incidental, including but not limited to:

              (a)  utility bill credits; or

              (b)  incidental income;

              derived from sending excess power back to the electricity grid.

Under **SECTION II – EXCLUSIONS**, 2.a. and 2.c. are replaced by the following:

    2.  Coverage L does not apply to:

       a.  liability:

          (1)  for *your* share of any loss assessment charged against all members of any type of association of property owners; or

          (2)  imposed on or assumed by any *insured* through any unwritten or written contract or agreement. This exclusion does not apply to:

              (a)  liability for damages that the *insured* would have in absence of the contract or agreement; or

              (b)  written contracts:

                  (i)  that directly relate to the ownership, maintenance, or use of any *insured location*; or

                  (ii)  when the liability of others is assumed by *you* prior to the *occurrence*;

              unless excluded elsewhere in the policy;

       c.  *property damage* to property rented to, used or occupied by, or in the care, custody, or control of any *insured* at the time of the *occurrence*. This exclusion does not apply to *property damage* caused by:

          (1)  fire;

          (2)  smoke;

          (3)  explosion;

          (4)  abrupt and accidental damage from water; or

          (5)  household pets, up to $500 in excess of *your* security deposit;

**SECTION I AND SECTION II – CONDITIONS**

**Concealment or Fraud** is replaced by the following:

    **Concealment or Fraud.**

       a.  **We** do not provide any coverages under this policy for *you* or any other *insured* if *you* or any other *insured* has intentionally concealed or misrepresented any material fact or circumstance relating to this insurance, whether before or after a loss.

         However, this condition applies only to facts or circumstances:

          (1)  on which *we* rely and are either:

              (a)  material; or

              (b)  made with intent to deceive; or

          (2)  that contribute to the loss.

       b.  No failure of a policy condition before the loss and no breach of a promissory warranty affects *our* obligations under this policy unless such failure or breach exists at the time of loss and either:

          (1)  increases the risk at the time of loss; or

          (2)  contributes to the loss.

         This item, b., does not apply to failure to tender payment of premium.

       c.  Violation of this condition by an *insured* does not apply to a claim of an innocent *insured*, to the extent of the innocent *insured's* interest in the covered property, if the loss:

          (1)  arises out of family violence or sexual assault against an innocent *insured*; and

          (2)  is caused by an intentional act of an *insured* against whom a family violence or sexual assault complaint is brought.

Under **Cancellation**, paragraphs 5.a. and 5.b. are replaced by the following:

       a.  **You** may cancel this policy at any time by giving *us* advance notice of the date cancellation is to take effect. *We* may require written, electronic, or other recorded verification of the request for cancellation prior to such cancellation taking effect.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2021

If only *your* interest is affected, the effective date of cancellation will be the later of:

(1) the date *we* received *your* notice of cancellation; or

(2) the date specified in the notice.

If notice must be given to a governmental agency, mortgagee, or other third party, the effective date of cancellation may be extended in order for *us* to provide notice of cancellation to *you* and the other party at least 10 days before the date cancellation takes effect.

b. *We* may cancel this policy by providing notice to a named insured shown on the *Declarations*. The notice will provide the date cancellation is effective.

(1) When *you* have not paid the premium, *we* may cancel at any time by providing notice at least 10 days before the date cancellation takes effect. This condition applies whether the premium is payable to *us* or *our* agent or under any finance or credit plan.

(2) When this policy has been in effect for less than 60 days and is not a renewal with *us*, *we* may cancel for any reason. *We* may cancel by providing notice at least 10 days before the date cancellation takes effect.

(3) When this policy has been in effect for 60 days or more, or at any time if it is a renewal with *us*, *we* may cancel:

(a) if there has been a material misrepresentation of fact that, if known to *us*, would have caused *us* not to issue this policy; or

(b) if the risk has changed substantially since this policy was issued.

*We* may cancel this policy by providing notice at least 30 days before the date cancellation takes effect.

(4) When this policy is written for a period longer than one year, *we* may cancel for any reason at anniversary. *We* may cancel by notifying *you* at least 30 days before the date cancellation takes effect.

**Nonrenewal** is replaced by the following:

**Nonrenewal.** If *we* decide not to renew this policy, then, at least 30 days before the end of the current policy period, *we* will provide a nonrenewal notice to a named insured shown on the *Declarations*.

If *we* decide not to renew this policy, *we* will notify any mortgagee shown in this policy in accordance with Georgia state insurance law.

**Joint and Individual Interests** is replaced by the following:

**Joint and Individual Interests.** If *you* consists of more than one person or entity, then each acts for all to change or cancel this policy.

**Electronic Delivery** is deleted.

OPTIONAL POLICY PROVISIONS

**Option ID** is replaced by the following:

**Option ID – Increased Dwelling Limit.** *We* will settle losses to damaged *building structures* covered under COVERAGE A – DWELLING according to the **Loss Settlement Provision** shown in the *Declarations*.

1. If the amount *you* actually and necessarily spend to repair or replace the damaged *dwelling* exceeds the limit of liability shown in the *Declarations* for Coverage A – Dwelling, *we* will pay the additional amounts not to exceed the Option ID limit shown in the *Declarations*.

2. If the amount *you* actually and necessarily spend to repair or replace damaged *building structures* covered under COVERAGE A – DWELLING, Other Structures exceeds the limit of liability shown in the *Declarations* for Other Structures, *we* will pay the additional amounts not to exceed 10% of the Option ID limit shown in the *Declarations*.

**Report Increased Values.** *You* must notify *us* within 90 days of the start of construction on any new *building structure* costing $5,000 or more; or any additions to or remodeling of *building structures* that increase their values by $5,000 or more. *You* must pay any additional premium due for the increased value. *We* will not pay more than the applicable limit of liability shown in the *Declarations* if *you* fail to notify *us* of the increased value within 90 days.

All other policy provisions apply.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2021

ST-2C
05/08-2024

## HO-2584 FUNGUS (INCLUDING MOLD) LIMITED COVERAGE ENDORSEMENT

This endorsement modifies insurance provided under the following: HOMEOWNERS POLICY, CONDOMINIUM UNITOWNERS POLICY, and RENTERS POLICY

**SECTION I – LOSSES NOT INSURED** 2.g., *Fungus* (SECTION I – LOSSES NOT INSURED 1.g. if *you* have a RENTERS POLICY), does not apply to the extent coverage is provided by this endorsement.

**SECTION I – ADDITIONAL COVERAGES**

The following is added:

**Remediation of Fungus.**

a. If *fungus* is the result of a *loss insured* other than fire or lightning, *we* will pay for:

  (1) any loss of use or delay in rebuilding, repairing, or replacing covered property, including any associated cost or expense, due to interference at the *residence premises* or location of the rebuilding, repair, or replacement of that property, by *fungus*;

  (2) any remediation of *fungus*, including the cost or expense to:

    (a) remove the *fungus* from covered property or to repair, restore, or replace that property;

    (b) tear out and replace any part of the *building structure* or other property as needed to gain access to the *fungus*; or

    (c) contain, treat, detoxify, neutralize, or dispose of or in any way respond to or assess the effects of the *fungus*; or

  (3) the cost of any testing or monitoring of air or property to confirm the type, absence, presence, or level of *fungus*, whether performed prior to, during, or after removal, repair, restoration, or replacement of covered property.

b. *We* do not cover *fungus* that is the result of:

  (1) seepage or leakage of water, steam, or sewage that occurs or develops over a period of time:

    (a) and is:

      i. continuous;

      ii. repeating;

      iii. gradual;

      iv. intermittent;

      v. slow; or

      vi. trickling; and

    (b) from a:

      i. heating, air conditioning, or automatic fire protective sprinkler system;

      ii. household appliance; or

      iii. plumbing system, including from, within or around any shower stall, shower bath, tub installation, or other plumbing fixture, including their walls, ceilings, or floors.

*We* also will not pay for losses arising from condensation or the presence of humidity, moisture, or vapor that occurs or develops over a period of time.

Item b. does not apply if the seepage or leakage of water, steam, or sewage is hidden from view within the walls, ceilings, or floors, and unknown by the *insured*.

  (2) defect, weakness, inadequacy, fault, or unsoundness in:

    (a) planning, zoning, development, surveying, or siting;

    (b) design, specifications, workmanship, repair, construction, renovation, remodeling, grading, or compaction;

    (c) materials used in repair, construction, renovation, remodeling, grading, or compaction; or

    (d) maintenance;

  of any property (including land, structures, or improvements of any kind) whether on or off the *residence premises*.

c. This coverage applies only if:

  (1) *we* receive immediate notice of the occurrence of the *loss insured* that is alleged to have resulted in *fungus*, and remediation begins as soon as possible; and

  (2) all reasonable means were used to save and preserve the property from further damage at the time of and after the occurrence of the *loss insured*.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017
CONTINUED



ST-2C
06069-2024

d.  The most **we** will pay for this coverage, in any one policy period, is the limit of insurance shown on the **Declarations** for this endorsement. This limit applies only to **fungus** resulting from a **loss insured** other than fire or lightning regardless of:

   (1)  the number of **losses insured** that combine or contribute to the presence of resulting **fungus**; or

   (2)  the number of claims made during the policy period.

   This limit includes any payments for **SECTION I – ADDITIONAL COVERAGES** and **COVERAGE C – LOSS OF USE**. Any payments made for this coverage are part of and not in addition to the limit of insurance that applies to covered property.

   All other policy provisions apply.

HO-2584

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

## HO-2465 FUNGUS (INCLUDING MOLD) LIMITATION OF LIABILITY COVERAGE ENDORSEMENT ($50,000)

This endorsement modifies insurance provided under the following: HOMEOWNERS POLICY, CONDOMINIUM UNITOWNERS POLICY, and RENTERS POLICY

Except for the coverage provided by this endorsement, the policy to which this endorsement is attached does not apply to any claim or suit for damages because of **bodily injury** or **property damage** arising out of or resulting from **fungus**.

### SECTION II – LIABILITY COVERAGES

**COVERAGE L – PERSONAL LIABILITY** is amended to include the following:

**We** will pay up to **our** limit of liability all sums that the **insured** is legally obligated to pay as damages because of **bodily injury** or **property damage** arising out of or resulting from the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any **fungus** at or from any source or location.

However, **we** do not cover any loss, cost, or expense arising out of any:

   (1)  request, demand, order, or statutory or regulatory requirement that any **insured** or others test for, monitor, clean up, remove, contain, treat, detoxify, neutralize, remediate, dispose of, or in any way respond to or assess the effects of **fungus**; or

   (2)  claim or suit for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating, disposing of, or in any way responding to or assessing the effects of **fungus**.

### LIMIT OF LIABILITY

Regardless of the number of **insureds** under this coverage or number of claims made or suits brought, the most **we** will pay under this coverage for all claims for damages in any one **occurrence** is $50,000. This limit is also the most **we** will pay for the sum of all claims arising from all **occurrences** during each policy period.

All other policy provisions apply.

HO-2465

©, Copyright, State Farm Mutual Automobile Insurance Company, 2016

(CONTINUED)

HO-2444.2
Page 1 of 2

## BACK-UP OF SEWER OR DRAIN ENDORSEMENT (Homeowners)

This endorsement modifies insurance provided under the following: HOMEOWNERS POLICY

The following is added to **SECTION I – ADDITIONAL COVERAGES**:

**Back-up of Sewer or Drain. *We*** will pay for accidental direct physical loss to the *dwelling* and covered personal property located within the *dwelling*, caused by back-up of water or sewage, subject to the following:

a. The back-up must be directly and immediately caused solely by water or sewage:

   (1) from outside the *residence premises* plumbing system that enters through a sewer or drain located inside the interior of the *dwelling*; or

   (2) that enters into and overflows from within a sump pump, sump pump well, or any other system located inside the interior of the *dwelling* designed to remove subsurface water drained from the foundation area.

b. Coverage does not apply to:

   (1) losses resulting from *your* failure to:

      (a) keep a sump pump or its related equipment in proper working condition; or

      (b) perform the routine maintenance or repair necessary to keep a sewer or drain free from obstructions; or

   (2) losses that occur or are in progress within the first 5 days of the inception of this endorsement. This limitation does not apply when:

      (a) this endorsement is attached to a newly issued policy; or

      (b) this endorsement is attached to replace another Back-Up of Sewer or Drain Endorsement. However, if this endorsement's coverage limits are higher than those of the endorsement it replaces, then the limitation described in (2) above applies only to the increase in coverage limits.

c. If *you* request an increase to the coverage limit for this endorsement, the increased coverage limit does not apply to losses that occur or are in progress within the first 5 days of *your* request.

d. The total limit of insurance provided by this endorsement will not exceed the amount determined by applying the Back-Up Of Sewer Or Drain percentage (%) shown in the *Declarations* to the COVERAGE A – DWELLING limit shown in the *Declarations*, as adjusted by the inflation coverage provisions of this policy. This is an additional amount of insurance.

e. The deductible for each loss under this coverage is the amount shown in the *Declarations* under **Section I Deductible** for "Other Losses" or "All Losses", whichever applies.

f. When applicable, the following coverages apply to a loss covered by this endorsement:

   (1) **COVERAGE C – LOSS OF USE**;

   (2) **SECTION I – ADDITIONAL COVERAGES**; and

   (3) **Option OL – Building Ordinance or Law**, only if this option is shown in the *Declarations*.

   Any payments made for these coverages are included in, and not in addition to, the limit of insurance described in item d. above.

For purposes of this endorsement only:

a. **SECTION I – LOSSES INSURED**, item 12.b.(2) is deleted from the policy.

b. **SECTION I – LOSSES NOT INSURED**, **Water** is replaced by:

   **Water**, meaning:

   (1) flood;

   (2) surface water. This does not include water solely caused by the release of water from a swimming pool, spigot, sprinkler system, hose, or hydrant;

   (3) waves (including tidal wave, tsunami, and seiche);

   (4) tides or tidal water;

   (5) overflow of any body of water (including any release, escape, or rising of any body of water, or any water held, contained, controlled, or diverted by a dam, levee, dike, or any type of water containment, diversion, or flood control device);

   (6) spray or surge from any of the items c.(1) through c.(5) described above, all whether driven by wind or not;

   (7) water or sewage from outside the *residence premises* plumbing system that enters through sewers or drains, or water or sewage that enters into and overflows from within a sump pump, sump pump well, or any other system designed to remove subsurface water that is drained from the foundation area;

   except as specifically provided in **SECTION I – ADDITIONAL COVERAGES**, **Back-up of Sewer or Drain**.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2020

(8) water or sewage below the surface of the ground, including water or sewage that exerts pressure on, or seeps or leaks through a ***building structure***, sidewalk, driveway, swimming pool, or other structure; or

(9) material carried or otherwise moved by any of the water or sewage, as described in items c.(1) through c.(8) above.

HO-2444.2

However, ***we*** will pay for any accidental direct physical loss by fire, explosion, or theft resulting from water, provided the resulting loss is itself a ***loss insured***.

c. **SECTION I – CONDITIONS**, **Other Insurance** is replaced by:

**Other Insurance.** This coverage is excess over other valid and collectible insurance.

All other policy provisions apply.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2020

ST-2C
07/08-2024

553-4380



# IMPORTANT NOTICE

## About Your Policy Declarations Page

Thank you for choosing State Farm® to provide your insurance.

Your Declarations Page and applicable endorsements are enclosed.  **PLEASE REVIEW YOUR COVERAGE SELECTIONS CAREFULLY. If you have any questions concerning the coverage listed on your Declarations Page, or you believe any information is incorrect, please contact your State Farm agent immediately.**

**By payment of the applicable premium and acceptance of this coverage, you agree to the terms and conditions of the policy and acknowledge that the Declarations Page accurately represents your choices of the types and amounts of coverage desired.**

The Declarations Page replaces the Binder you recently received.  You should keep the Binder, Declarations Page, and Policy Booklet with your important papers.

Again, thank you for choosing State Farm!

*This message is only a general description of coverage and/or coverage changes and is not a statement of contract.  All coverages are subject to all policy provisions and applicable endorsements.*

**553-4380**



This policy is one of the broadest forms available today, and provides you with outstanding value for your insurance dollars.    However, we want to point out that every policy contains limitations and exclusions.    Please read your policy carefully, especially "Losses Not Insured" and all exclusions.

State Farm®
**Homeowners Policy**

**Georgia**
HW-2111

# HOMEOWNERS POLICY
## TABLE OF CONTENTS

**AGREEMENT** ...................................................1

**DEFINITIONS** ...................................................1

**DEDUCTIBLE** ...................................................5

**SECTION I – PROPERTY COVERAGES** ....................5

  **COVERAGE A – DWELLING**..........................5

    Dwelling ....................................................5

    Other Structures .......................................5

    Property Not Covered................................5

  **COVERAGE B – PERSONAL PROPERTY** ..........5

    Property Covered .....................................5

    Special Limits of Liability .........................6

    Property Not Covered................................6

  **COVERAGE C – LOSS OF USE**.......................8

    Additional Living Expense .........................8

    Fair Rental Value......................................8

    Prohibited Use..........................................8

  **SECTION I – ADDITIONAL COVERAGES** ...........8

    Debris Removal ........................................8

    Temporary Repairs...................................9

    Trees, Shrubs, and Landscaping ..............9

    Fire Department Service Charge................9

    Property Removed .....................................9

    Credit Card, Bank Fund Transfer Card, Forgery, and Counterfeit Money.....................9

    Power Interruption ..................................10

    Refrigerated Products .............................10

    Arson Reward..........................................10

    Volcanic Action .......................................10

    Collapse ..................................................10

    Locks and Remote Devices.....................11

    Fuel Oil Release ......................................11

    Tear Out ..................................................11

    Home Certification ...................................11

**INFLATION COVERAGE** ......................................11

**SECTION I – LOSSES INSURED** ...............................12

  **COVERAGE A – DWELLING**........................12

  **COVERAGE B – PERSONAL PROPERTY** ...........12

**SECTION I – LOSSES NOT INSURED**......................14

**SECTION I – LOSS SETTLEMENT** ...........................18

  **COVERAGE A – DWELLING**........................18

    A1 – Replacement Cost Loss Settlement – Similar Construction ..........................................18

    A2 – Replacement Cost Loss Settlement – Common Construction......................................19

  **COVERAGE B – PERSONAL PROPERTY** ...........19

    B1 – Limited Replacement Cost Loss Settlement ...............................................19

    B2 – Depreciated Loss Settlement.................20

**SECTION I – CONDITIONS**.........................................20

    Insurable Interest and Limit of Liability .............20

    Your Duties After Loss .................................20

    Loss to a Pair or Set ....................................21

    Appraisal......................................................21

    Other Insurance...........................................22

    Suit Against Us ............................................22

    Our Option ...................................................22

    Loss Payment .............................................22

    Abandonment of Property.............................22

    Mortgagee Clause .......................................22

    No Benefit to Bailee.....................................23

    Recovered Property......................................23

    Assignment of Claim....................................23

**SECTION II – LIABILITY COVERAGES** .......................23

  **COVERAGE L – PERSONAL LIABILITY** ...............23

  **COVERAGE M – MEDICAL PAYMENTS TO OTHERS** ................................................................23

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

**SECTION II – ADDITIONAL COVERAGES** ............24

Claim Expenses .........................................24

First Aid Expenses ....................................24

Damage to Property of Others ........................24

**SECTION II – EXCLUSIONS** ........................25

**SECTION II – CONDITIONS** ........................28

Limit of Liability .......................................28

Severability of Insurance .............................28

Duties After Loss ......................................28

Coverage M Requirements ............................29

Payment of Claim – Coverage M or Damage
to Property of Others .................................29

Suit Against Us .........................................29

Bankruptcy of an Insured ............................29

Other Insurance – Coverage L .......................29

**SECTION I AND SECTION II – CONDITIONS** ........29

Policy Period ...........................................29

Concealment or Fraud.................................29

Liberalization Clause ..................................30

Waiver or Change of Policy Provisions ...........30

Cancellation.............................................30

Nonrenewal ............................................30

Assignment of Policy ..................................31

Subrogation and Reimbursement....................31

Death .....................................................31

Conformity to State Law ..............................31

Premium .................................................31

Right to Inspect.........................................32

Joint and Individual Interests ........................32

Change of Policy Address .............................32

Electronic Delivery.....................................32

Our Rights Regarding Claim Information..........32

Duties Regarding Claim Information................33

**OPTIONAL POLICY PROVISIONS** ..................33

Option AI – Additional Insured.......................33

Option BP – Business Property ......................33

Option BU – Business Pursuits ......................33

Option FA – Firearms .................................34

Option ID – Increased Dwelling Limit .............34

Option IO – Incidental Business .....................35

Option JF – Jewelry and Furs.........................35

Option OL – Building Ordinance or Law...........36

Option SG – Silverware and Goldwar7
Theft ......................................................37

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

# HOMEOWNERS POLICY

## AGREEMENT

*We* agree to provide the insurance described in this policy:

1. based on *your* payment of premium, in a form acceptable to *us*, for the coverages *you* chose;

2. based on *your* compliance with all applicable provisions of this policy; and

3. based on the information *you* have given *us* and *your* statements in this agreement.

*You* agree, by acceptance of this policy, that:

1. *you* will pay premiums when due and comply with the provisions of this policy;

2. the statements in this agreement are *your* statements and are true;

3. *we* insure *you* on the basis *your* statements are true; and

4. this policy contains all of the agreements between *you* and *us* and any of *our* agents.

Unless otherwise indicated in the application, *you* state that during the five years preceding the time of *your* application for this insurance *you* have not had any losses, insured or not.

When *you* request changes to this policy, or the information or factors used to calculate the premium for this policy changes during the policy period, *we* may adjust the premium in accordance with the change during the policy period and *you* must pay any additional premium due within the time *we* specify.

## DEFINITIONS

*We* define the following words and phrases for use throughout this policy. These definitions apply to the singular, plural, and possessive forms of these words and phrases. Defined words and phrases are printed in bold italics.

1. **"actual cash value"** means the value of the damaged part of the property at the time of loss, calculated as the estimated cost to repair or replace such property, less a deduction to account for pre-loss depreciation. For this calculation, all components of this estimated cost including, but not limited to:

   a. materials, including any tax;

   b. labor, including any tax; and

   c. overhead and profit;

   are subject to depreciation.

   The depreciation deduction may include such considerations as:

   a. age;

   b. condition;

   c. reduction in useful life;

   d. obsolescence; and

   e. any pre-loss damage including wear, tear, or deterioration;

   of the damaged part of the property.

2. **"bodily injury"** means physical injury, sickness, or disease to a person. This includes required care, loss of services, and death resulting therefrom.

   *Bodily injury* does not include:

   a. any of the following which are communicable: disease, bacteria, parasite, virus, or other organism, any of which are transmitted by any *insured* to any other person;

   b. the actual or alleged exposure to any such disease, bacteria, parasite, virus, or other organism by any *insured* to any other person; or

   c. emotional distress, mental anguish, humiliation, mental distress, mental injury, or any similar injury unless it arises out of actual physical injury to some person.

3. **"building structure"** means a structure fully enclosed with permanent walls and a roof. A permanent wall or roof does not include any kind of temporary materials including but not limited to tarps, plastic sheeting, or other similar material. A structure that is otherwise fully enclosed with permanent walls and a roof, that is undergoing repairs due to a recent *loss insured*, using materials such as tarps, plastic sheeting, or other similar material, is still considered a *building structure*.

1

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

HW-2111

A **building structure** includes:

a.  the foundation supporting the structure, including:

   (1)  slabs;

   (2)  basement walls;

   (3)  crawl space walls;

   (4)  footings; and

   (5)  gravel, stone, or sand, used as fill material and located not more than 12 inches directly below a slab described in item a.(1), including water supply lines, domestic water pipes, and sewer pipes located within this fill material; and

b.  wall-to-wall carpeting attached to the structure.

4.  **"business"** means any full-time or part-time activity, trade, profession, employment, or occupation or a commercial, mercantile, or industrial undertaking of an economic nature. It does not matter whether it is continuous or regular, is a secondary or supplemental source of income, or is an **insured's** principal means of livelihood. Profit and profit motive are irrelevant.

   **Business** does not include:

a.  volunteer activities for a not-for-profit or nonprofit organization or public agency for which no money is received other than payment of expenses;

b.  incidental and infrequent personal economic activity such as a hobby, garage or yard sale, or traditional farm activities when the farm products are intended only for the personal use of the **insured**;

c.  any occasional or part-time self-employed activity by a person under 19 years of age that involves no employees or subcontracted independent contractors and is a type of activity normally performed by persons under 19 years of age, including but not limited to, child care, lawn mowing, or paper delivery;

d.  the ownership, maintenance, or use of systems and equipment used to generate electrical power up to but not exceeding 125 percent of

the actual electrical power usage by the **residence premises** in the 12-month period prior to the date of the loss; or

e.  ownership of the **residence premises** by the person or organization shown in the **Declarations** as Additional Insured.

5.  **"Declarations"** means the policy **Declarations**, any amended **Declarations**, the most recent renewal **Declarations**, an Evidence of Insurance form, or any endorsement changing any of these.

6.  **"diminution in value"** means any reduction in the value of any covered property prior to or following repair or replacement as compared to the value of that property immediately before the loss.

7.  **"dwelling"** means the **building structure** on the **residence premises** used as the primary private residence and includes structures attached to the **dwelling**.

8.  **"fungus"** means any type or form of **fungus**, including mold, mildew, mycotoxins, spores, scents, or byproducts produced or released by fungi.

9.  **"insured"** means:

a.  **you**;

b.  **your relatives**; and

c.  any other person under the age of 21 in the care of a person described above.

   Under Section II, **insured** also means:

d.  the person or organization legally responsible for animals or watercraft to which this policy applies. However, the animal or watercraft must be owned by **you** or a person included in 9.b. or 9.c. above.  A person or organization using or having custody of these animals or watercraft in the course of a **business**, or without permission of the owner, is not an **insured**; and

e.  with respect to any vehicle to which this policy applies, any person while engaged in **your** employment or the employment of a person included in 9.b. or 9.c. above.

10.  **"insured location"** means:

a.  the **residence premises**;

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

b. the part of any other premises, other structures, and grounds used by *you* as a residence. This includes premises, structures, and grounds *you* acquire while this policy is in effect for *your* use as a residence;

c. any premises used by *you* in connection with the premises included in 10.a. or 10.b. above;

d. any part of a premises not owned by an *insured* but where an *insured* is temporarily residing;

e. land owned by or rented to an *insured* on which a one or two family dwelling is being constructed as a residence for an *insured*;

f. individual or family cemetery plots or burial vaults owned by an *insured*;

g. any part of a premises occasionally rented to an *insured* for purposes other than *business*;

h. vacant land owned by or rented to an *insured*. For the purposes of this definition, vacant land does not include:

(1) farm land;

(2) land containing a residence; or

(3) land containing fences, corrals, boat docks, tool sheds, barns, grain bins, and similar structures, unless they are used solely for the personal use of the *insured*; or

i. farm land (without buildings), rented or held for rental to others, but not to exceed a total of 500 acres, regardless of the number of locations.

11. *"loss insured"* means a loss as described under **SECTION I – LOSSES INSURED**, **COVERAGE A – DWELLING** and **SECTION I – LOSSES INSURED**, **COVERAGE B – PERSONAL PROPERTY**.

12. *"motor vehicle"*, when used in Section II of this policy, means:

a. a land *motor vehicle* designed for travel on public roads or subject to motor vehicle registration;

b. a trailer or semi-trailer designed for travel on public roads and subject to motor vehicle registration;

c. a "recreational or utility vehicle" while off an *insured location*. "Recreational or utility vehicle" means a motorized vehicle designed for recreation or utility purposes, used principally off public roads, and that is owned or leased by an *insured*. This includes, but is not limited to, a motorized all-terrain vehicle, side-by-side vehicle, utility work vehicle, amphibious vehicle, dune buggy, go-cart, golf cart, snowmobile, trailbike, minibike, and personal assistive mobility device. "Leased" does not include temporary rental;

d. a "locomotive" while off an *insured location*. "Locomotive" means a self-propelled vehicle for pulling or pushing freight or passenger cars on tracks that is large enough to carry a person and is owned or leased by an *insured*. "Leased" does not include temporary rental;

e. a bulldozer, track loader, backhoe, high-hoe, trencher, grader, crane, self-propelled scraper, excavator, pipe-layer, cherry picker, telehandler, logging vehicle, mining vehicle, or road building vehicle that is owned or leased by an *insured* while off an *insured location*. "Leased" does not include temporary rental; and

f. any vehicle while being towed or pushed by or carried on a vehicle included in 12.a. through 12.e. above.

The following are not *motor vehicles*:

a. a boat, camper, home, or utility trailer not being towed or pushed by or carried on a vehicle included in 12.a. through 12.e. above;

b. a motorized land vehicle in storage on an *insured location* not intended to be operated for an extended period of time and rendered inoperable by placing the vehicle on blocks or removing parts essential for its operation;

c. a motorized golf cart while used for golfing purposes;

d. a motorized vehicle or trailer designed to assist persons with disabilities that is not designed for travel on public roads or subject to motor vehicle registration; or

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

e. a commercially manufactured two, three, or four wheeled personal conveyance powered only by or assisted by an unmodified motor or engine with a manufacturer's power rating of no more than 1 horsepower and capable of a top speed of no more than 20 miles per hour.

13. *"occurrence"*, when used in Section II of this policy, means an accident, including accidental exposure to conditions, which first results in:

a. *bodily injury*; or

b. *property damage*;

during the policy period. All *bodily injury* and *property damage* resulting from one accident, series of related accidents, or from continuous and repeated exposure to the same general conditions is considered to be one *occurrence*.

14. *"property damage"* means physical damage to or destruction of tangible property, including loss of use of this property. Theft or conversion of property by any *insured* is not *property damage*.

15. *"relative"* means any person related to *you* by:

a. blood;

b. adoption;

c. marriage; or

d. civil union, domestic partnership, or other substantially similar legal relationship that is recognized and valid in the state where, and at the time when, the legal relationship was established;

and who resides primarily with *you*.

16. *"residence employee"* means an employee of an *insured*, or an employee leased to an *insured* by a labor leasing firm under an agreement between an *insured* and the labor leasing firm, who performs duties, including household or domestic services, in connection with the maintenance or use of the *residence premises*. This includes employees who perform similar duties elsewhere for *you*. This does not include employees while performing duties in connection with the *business* of an *insured*.

17. *"residence premises"* means:

a. the one, two, three, or four family dwelling, other structures and grounds; or

b. that part of any other *building structure*;

where *you* reside and which is shown in the *Declarations*.

18. *"State Farm Companies"* means one or more of the following:

a. State Farm Mutual Automobile Insurance Company;

b. State Farm Fire and Casualty Company; and

c. subsidiaries or affiliates of either 18.a. or 18.b. above.

19. *"vacant dwelling"* means:

a. a dwelling:

(1) that has not been occupied as a residence for more than 30 consecutive days immediately before the loss; and

(2) where a predominant amount of personal property has been removed or is absent such that the dwelling is not functional as a habitual place of residence.

A dwelling will be considered occupied only if it is being used as a habitual place of residence with *your* knowledge and approval.

b. A dwelling that is under active construction will not be considered a *vacant dwelling*. A dwelling is under active construction when it is:

(1) being built as a new structure;

(2) being repaired due to damage otherwise covered by this policy; or

(3) undergoing substantial improvements, renovations, remodeling, or modifications;

and the construction results in substantial continuing activities by persons associated with the construction project at the premises during the relevant time periods.

20. *"we"*, *"us"*, and *"our"* mean the Company shown in the *Declarations*.

21. *"you"* and *"your"* mean the person or persons shown as "Named Insured" in the *Declarations*. If a "Named Insured" shown in the *Declarations* is a human being, then *you* and *your* include:

a. a spouse of a "Named Insured";

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

b. a party to a civil union with a "Named Insured";

c. a domestic partner of a "Named Insured"; or

d. a person in a substantially similar legal relationship with a "Named Insured";

if such relationship is recognized and valid in the state where, and at the time when, the legal relationship was established, so long as the person in the above relationship resides primarily with that "Named Insured".

## DEDUCTIBLE

In case of loss under this policy, *we* will pay, subject to specified policy limits, only that part of the amount of the loss that exceeds the deductible amount shown in the *Declarations*. Deductibles will be applied per occurrence. Deductibles apply to specific losses as described in this policy.

## SECTION I – PROPERTY COVERAGES

### COVERAGE A – DWELLING

1. **Dwelling.** *We* cover the *dwelling* and materials and supplies located on or adjacent to the *residence premises* for use in the construction, alteration, or repair of the *dwelling* or other structures on the *residence premises*.

2. **Other Structures.** *We* cover other structures on the *residence premises*, separated from the *dwelling* by clear space. Structures connected to the *dwelling* by only a fence, utility line, or similar connection are considered to be other structures.

   *We* do not cover other structures:

   a. not permanently attached to or otherwise forming a part of the realty;

   b. used either completely or in part for *business* purposes unless such use consists solely of office space for paperwork, computer work, or use of a telephone, and consists solely of activities that are:

      (1) duties of the *insured's* employment by another; and

      (2) performed solely by the *insured*; or

   c. rented or held for rental unless:

      (1) rented to a person who is a tenant of the *dwelling;*

      (2) rented for use solely as a private garage; or

      (3) rented either completely or in part, for exclusive use as a residence, for no more than 30 nights in the 12-month period prior to the date of the loss.

3. **Property Not Covered.** *We* do not cover:

   a. land, including the land necessary to support any Coverage A property. *We* also do not cover:

      (1) any costs required to replace, rebuild, stabilize, or otherwise restore the land; or

      (2) the costs of repair techniques designed to compensate for or prevent land instability to any property, whether or not insured under Coverage A;

   b. trees, shrubs, live or artificial plants, lawns, or artificial grass, except as provided in **SECTION I – ADDITIONAL COVERAGES**, **Trees, Shrubs, and Landscaping**; or

   c. systems and equipment used to generate electrical power exceeding 125 percent of the actual electrical power usage by the *residence premises* in the 12-month period prior to the date of the loss.

### COVERAGE B – PERSONAL PROPERTY

1. **Property Covered.**

   a. *We* cover personal property owned or used by an *insured* while it is anywhere in the world. This includes structures not permanently attached to or otherwise forming a part of the realty. At *your* request, *we* will cover personal property:

      (1) owned by others while the property is on the part of the *residence premises* occupied exclusively by an *insured*;

      (2) owned by a guest or a *residence employee*, while the property is in any other residence occupied by an *insured*; and

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

(3) owned by roomers, boarders, tenants, and other residents, any of whom are related to **you**.

b. **We** cover personal property usually located at an **insured's** residence, other than the **residence premises**, for up to $1,000 or 10% of the Coverage B limit, whichever is greater. This limitation does not apply to personal property:

(1) in a newly acquired principal residence for the first 30 days after **you** start moving the property there. If the **residence premises** is a newly acquired principal residence, personal property in **your** immediate past principal residence is not subject to this limitation for the first 30 days after the inception of this policy; and

(2) of a student who is an **insured** while located at a residence away from the **residence premises**.

**Special Limits of Liability.** These limits do not increase the Coverage B limit. The special limit for each of the following categories is the total limit for each loss for all property in that category:

a. $200 on money, coins, and medals, including any of these that are a part of a collection, bank notes, bullion, gold other than goldware, silver other than silverware, and platinum;

b. $1,500 on property used or intended for use in a **business**, including merchandise held as samples or for sale or for delivery after sale, while on the **residence premises**. This coverage is limited to $750 on such property away from the **residence premises**.

Electronic data processing system equipment or the recording or storage media used with that equipment is not included under this coverage, and is addressed in item c. below;

c. $10,000 on electronic data processing system equipment used or intended for use in a **business**, including but not limited to computers, tablets, mobile personal communication equipment, global positioning systems, mobile personal electronic devices used for the reproduction of sound,

and standard media or non-media equipment for use with the above devices;

d. $1,500 on securities, checks, cashiers checks, travelers checks, money orders, gift certificates, gift cards, rechargeable debit cards, phone cards and other negotiable instruments, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, passports, and tickets;

e. $1,500 on watercraft of all types and outboard motors, including their trailers, furnishings, and equipment;

f. $1,500 on trailers not used with watercraft;

g. $2,500 on stamps, trading cards, and comic books, including any of these that are a part of a collection;

h. $2,500 for loss by theft of firearms;

i. $2,500 for loss by theft of silverware and goldware;

j. $5,000 on any one article and $10,000 in the aggregate for loss by theft of any rug, carpet (except wall-to-wall carpet), tapestry, wall-hanging, or other similar article;

k. $1,000 on commercially manufactured two, three, or four wheeled personal conveyances powered only by or assisted by an unmodified motor or engine with a manufacturer's power rating of no more than 1 horsepower and capable of a top speed of no more than 20 miles per hour. This does not include such conveyances that are:

(1) designed for assisting persons with disabilities;

(2) not designed for travel on public roads; and

(3) not subject to motor vehicle registration; and

l. $1,000 for loss by theft of jewelry, watches, fur garments and garments trimmed with fur, and precious and semi-precious stones.

2. **Property Not Covered. We** do not cover:

a. articles separately described and specifically insured in this or any other insurance;

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

b. animals, birds, or fish;

c. any engine-propelled or motor-propelled vehicle or machine, including parts, designed for movement on land, except as provided in **Special Limits of Liability**, item k. However, *we* do cover those vehicles or machines:

    (1) that are:

        (a) not designed for travel on public roads; and

        (b) not subject to motor vehicle registration;

    (2) and that are:

        (a) used primarily to service the *insured location*; or

        (b) designed for assisting persons with disabilities;

d. any electronic equipment, devices, or accessories designed for the recording, reproduction, or storage of audio, video, photos, or other data that is permanently installed in or permanently fastened to an engine-propelled or motor-propelled vehicle or hard-wired directly to the vehicle's electrical system. *We* also do not cover removable products that may be used with the equipment or devices described above, including but not limited to tapes, discs, videos, or memory cards while in an engine-propelled or motor-propelled vehicle;

e. aircraft and parts. This does not apply to unmanned aircraft systems used as model aircraft and operated solely for recreational or hobby purposes;

f. property of roomers, boarders, tenants, and other residents not related to *you*;

g. property regularly rented or held for rental to others by an *insured*. This does not apply to property of an *insured*:

    (1) in a sleeping room when the *dwelling* is rented in part, for use as a permanent residence, by either one or two full-time roomers or boarders; or

    (2) on the *residence premises* if it is rented, either completely or in part, for exclusive use as a residence, for no more than 30 nights in the 12-month period prior to the date of the loss;

h. property rented or held for rental to others away from the *residence premises*;

i. any radio devices or transmitters, global positioning systems, radar or laser detectors, antennas, and all other similar equipment that is permanently installed in or permanently fastened to an engine-propelled or motor-propelled vehicle or that is hard-wired directly to the vehicle's electrical system;

j. books or records of accounts receivable, abstracts or other journals, architectural or technical drawings, card index systems, or other records. This does not apply to any recording or storage media for electronic data processing. *We* will cover the cost of blank books, cards, or other blank material plus the cost of labor *you* incur for transcribing or copying such records;

k. recording or storage media for electronic data processing that cannot be replaced with property of like kind and quality on the current retail market;

l. purchased or created audio, video, photos, or other data that cannot be replaced with like kind and quality on the current retail market and that is transferred or downloaded onto mobile communication equipment, global positioning systems, or electronic devices designed for the recording, reproduction, or storage of audio, video, photos, or other data;

m. contraband, or any property used in the course of illegal consumption, possession, import, export, or trade;

n. outdoor hardscape property used for aesthetic purposes except as provided in **SECTION I – ADDITIONAL COVERAGES**, **Trees, Shrubs, and Landscaping**; or

o. electronic currency, digital currency, virtual currency, crypto-currency, and other similar mediums of exchange.

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

## COVERAGE C – LOSS OF USE

The most *we* will pay for the sum of all losses combined under **Additional Living Expense**, **Fair Rental Value**, and **Prohibited Use** is the limit of liability shown in the *Declarations* for **Coverage C – Loss of Use**.

1. **Additional Living Expense.** When a *loss insured* causes the *residence premises* to become uninhabitable, *we* will pay the reasonable and necessary increase in cost incurred by an *insured* to maintain their normal standard of living for up to 24 months. *Our* payment is limited to incurred costs for the shortest of:

   a. the time required to repair or replace the premises;

   b. the time required for *your* household to settle elsewhere; or

   c. 24 months.

   This period of time is not limited by the expiration of this policy.

   *We* will not pay more than the limit of liability shown in the *Declarations* for **Coverage C – Loss of Use**. Any normal expenses that are reduced or discontinued due to a *loss insured* will be subtracted from any amount owed.

2. **Fair Rental Value.** When a *loss insured* causes that part of the *residence premises* rented to others or held for rental by *you* to become uninhabitable, *we* will pay its fair rental value. Payment will be for the shortest time required to repair or replace the part of the premises rented or held for rental, but not to exceed 12 months. This period of time is not limited by the expiration of this policy. Fair rental value will not include any expense that does not continue while that part of the *residence premises* rented or held for rental is uninhabitable.

3. **Prohibited Use.** *We* will pay Additional Living Expense and Fair Rental Value, for a continuous period not to exceed two weeks, beginning when a civil authority issues an order of evacuation or prohibits *your* use of the *residence premises*, provided that:

   a. direct physical damage occurs to any property, other than covered property located on the *residence premises*, arising from a cause of loss that would be a *loss insured* under this policy

if the damage had occurred to property on the *residence premises*;

   b. the *residence premises* is within one mile of property damaged by a cause of loss identified in 3.a. above; and

   c. the action of the civil authority is taken in response to:

      (1) dangerous physical conditions resulting from the continuation of the cause of loss identified in 3.a. above;

      (2) dangerous physical conditions resulting from the damage caused by the cause of loss identified in 3.a. above; or

      (3) the need to gain free access to property damaged by the cause of loss identified in 3.a. above.

   *We* will not pay for loss or expense due to cancellation of a lease or agreement.

## SECTION I – ADDITIONAL COVERAGES

The following Additional Coverages are subject to all the terms, provisions, exclusions, and conditions of this policy.

1. **Debris Removal.** *We* will pay the reasonable expenses *you* incur in the removal of debris of covered property damaged by a *loss insured*. This expense is included in the limit applying to the damaged property. The following coverages and limits also apply:

   a. When the amount payable for the property damage plus the debris removal exceeds the limit for damaged property, an additional 5% of that limit is available for debris removal expense. This additional amount of insurance does not apply to **SECTION I – ADDITIONAL COVERAGES**, **Trees, Shrubs, and Landscaping**.

   b. *We* will also pay up to $1,000 total for each loss to cover the reasonable expenses *you* incur in the removal of tree debris and stumps from the *residence premises*, unless otherwise excluded. This coverage applies when:

      (1) the tree has caused a *loss insured* to Coverage A property; or

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

(2) the tree debris felled by windstorm, hail, or weight of snow or ice blocks:

(a) the driveway, on the *residence premises*, and prevents land *motor vehicle* access to or from the *dwelling*; or

(b) a ramp designed to assist persons with disabilities, on the *residence premises*, and prevents access to or from a *building structure*.

2. **Temporary Repairs.** If damage is caused by a *loss insured*, *we* will pay the reasonable and necessary cost *you* incur for temporary repairs to covered property to protect the property from further immediate damage or loss. This coverage does not increase the limit applying to the property being repaired.

3. **Trees, Shrubs, and Landscaping. *We*** will pay for accidental direct physical loss to outdoor:

a. trees, shrubs, live or artificial plants, and lawns;

b. artificial grass; and

c. hardscape property used for aesthetic purposes not permanently affixed to realty;

on the *residence premises*, caused by the following perils: **Fire or lightning**, **Explosion**, **Riot or civil commotion**, **Aircraft**, **Vehicles** (not owned or operated by a resident of the *residence premises*), **Vandalism or malicious mischief**, or **Theft**.

The limit for this coverage, including the removal of debris, will not exceed 5% of the amount shown in the *Declarations* for **COVERAGE A – DWELLING**. *We* will not pay more than $750 for any one outdoor tree, shrub, plant, or hardscape item, including debris removal expense. This coverage may increase the limit otherwise applicable. *We* will not pay for any loss to property grown for *business* purposes.

4. **Fire Department Service Charge. *We*** will pay up to $500 per occurrence for fire department charges incurred when the fire department is called to save or protect Coverage A property from fire, lightning, or explosion. No deductible applies to this coverage. This coverage may increase the limit otherwise applicable.

5. **Property Removed. *We*** will pay for any accidental direct physical loss to covered property while being removed from a premises endangered by a *loss insured*. This coverage also applies to the property

for up to 30 days while removed. *We* will also pay for reasonable expenses incurred by *you* for the removal and return of the covered property. This coverage does not increase the limit applying to the property being removed.

6. **Credit Card, Bank Fund Transfer Card, Forgery, and Counterfeit Money.**

a. *We* will pay up to $1,000 for:

(1) the legal obligation of an *insured* to pay because of the theft or unauthorized use of credit cards and bank fund transfer cards issued to or registered in an *insured's* name. If an *insured* has not complied with all terms and conditions under which the cards are issued, *we* will not pay for use by an *insured* or anyone else;

(2) loss to an *insured* caused by forgery or alteration of any check or negotiable instrument; and

(3) loss to an *insured* through acceptance in good faith of counterfeit United States or Canadian paper currency.

No deductible applies to this coverage.

*We* will not pay more than the limit stated above for forgery or alteration committed by any one person. This limit applies when the forgery or alteration involves one or more instruments in the same loss.

b. *We* will not pay for loss arising out of *business* pursuits or dishonesty of an *insured*.

c. Defense:

(1) *We* may make any investigation and settle any claim or suit that *we* decide is appropriate. *Our* obligation to defend claims or suits ends when the amount *we* pay for the loss equals *our* limit of liability.

(2) If claim is made or a suit is brought against an *insured* for liability under the Credit Card or Bank Fund Transfer Card coverage, *we* will provide a defense. This defense is at *our* expense by counsel of *our* choice.

(3) *We* have the option to defend at *our* expense an *insured* or an *insured's* bank

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

against any suit for the enforcement of payment under the Forgery coverage.

7. **Power Interruption.** *We* will pay for accidental direct physical loss caused directly or indirectly by a change of temperature that results from power interruption that takes place on the *residence premises*. The power interruption must be caused by a *loss insured* occurring on the *residence premises*. The power lines off the *residence premises* must remain energized. This coverage does not increase the limit applying to the damaged property.

8. **Refrigerated Products.** Coverage B is extended to cover the contents of deep freeze or refrigerated units on the *residence premises* for loss due to power failure or mechanical failure. If mechanical failure or power failure is known to *you*, all reasonable means must be used to protect the property insured from further damage or this coverage is void. Power failure or mechanical failure does not include:

   a. removal of a plug from an electrical outlet; or

   b. turning off an electrical switch unless caused by a *loss insured*.

   This coverage does not increase the limit applying to the damaged property.

9. **Arson Reward.** *We* will pay $1,000 for information that leads to an arson conviction in connection with a fire loss to property covered by this policy. This coverage may increase the limit otherwise applicable. However, the $1,000 limit will not be increased regardless of the number of persons providing information.

10. **Volcanic Action.** *We* will pay for accidental direct physical loss to a covered *building structure* or covered property contained in a *building structure* resulting from the eruption of a volcano when the loss is directly and immediately caused by:

    a. airborne volcanic shock waves;

    b. ash, dust, or particulate matter; or

    c. lava flow.

    *We* will also pay for the removal of that ash, dust, or particulate matter that has caused accidental direct physical loss to a covered *building structure* or covered property contained in a *building structure*.

All volcanic eruptions that occur within any 168-hour period will be considered one volcanic eruption.

This coverage does not increase the limit applying to the damaged property.

11. **Collapse.** *We* will pay for accidental direct physical loss to covered property involving the abrupt, entire collapse of a *building structure* or any part of a *building structure*.

    a. Collapse means the abrupt and entire falling down, caving in, or falling into pieces of a *building structure* or any part of a *building structure*. Collapse does not include any of the following:

       (1) settling, cracking, crumbling, deterioration, shrinking, bulging, expansion, sagging, bowing, leaning, or bending;

       (2) substantial structural impairment;

       (3) imminent or threatened collapse;

       (4) a *building structure* or any part of a *building structure* that is in danger of falling down or caving in; or

       (5) a part of a *building structure* that is standing even if:

          (a) it has separated from another part of the *building structure*; or

          (b) it shows evidence of settling, cracking, crumbling, deterioration, shrinking, bulging, expansion, sagging, bowing, leaning, or bending.

    b. The collapse must be directly and immediately caused by one or more of the following:

       (1) perils described in **SECTION I – LOSSES INSURED**, **COVERAGE B – PERSONAL PROPERTY**. These perils apply to *building structures* covered under Coverage A or Coverage B for loss insured by this Additional Coverage;

       (2) decay or deterioration of, or damage from animals, birds, or insects to:

          (a) a connector; or

          (b) a structural member of a *building structure*;

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

The decay, deterioration, or damage must be hidden from view and unknown to all *insureds* prior to the collapse;

(3)　weight of contents, equipment, animals, or people;

(4)　weight of ice, snow, sleet, or rain that collects on a roof, porch, or deck; or

(5)　use of defective material or methods in the construction (includes remodeling or renovation) of the *building structure*, if the collapse occurs during the course of the construction of the *building structure*.

Loss to awnings, fences, patios, pavement, swimming pools, underground pipes, flues, drains, cesspools, septic tanks, foundations (including slabs, basement walls, and crawl space walls), retaining walls, bulkheads, piers, wharfs, docks, trellises, or antennas and their supporting structures is not included under items (2), (3), and (4) immediately above unless the loss is the direct and immediate result of the collapse of a *building structure* or any part of a *building structure*.

This coverage does not increase the limit applying to the damaged property.

12.　**Locks and Remote Devices.** *We* will pay up to $1,000 for each loss for the reasonable expenses *you* incur to rekey, replace, recode, program, or reprogram locks on exterior doors to the *dwelling* or other structures located on the *residence premises* when the keys or remote devices used with those doors are part of a covered theft loss. This coverage includes remote devices designed solely for locking, unlocking, opening, or closing doors, including garage doors and gates.

No deductible applies to this coverage.

13.　**Fuel Oil Release.** *We* will pay up to $10,000 for each loss for accidental direct physical loss to covered property caused by the abrupt and accidental escape of liquid fuel oil from a fixed household tank, apparatus, or pipes that are part of a heating unit for the *dwelling*. This includes damage to covered property resulting from an accidental spill or overflow of fuel oil in the course of filling a fixed household tank.

This coverage includes surface clean up only. *We* will not pay for:

a.　the cost to repair or replace the fuel oil tank, apparatus, and pipes; or

b.　the cost of testing, monitoring, removing, treating, or detoxifying of soil, air, or water.

This coverage does not increase the limit applying to the damaged property.

14.　**Tear Out.** If a *loss insured* to Coverage A property is caused by water, steam, or sewage escaping from a system or appliance, *we* will also pay the reasonable cost *you* incur to tear out and replace only that particular part of the *building structure* necessary to gain access to the specific point of that system or appliance from which the water, steam, or sewage escaped. *We* will not pay for the cost of repairing or replacing the system or appliance itself. This coverage does not increase the limit applying to Coverage A property.

15.　**Home Certification.** If damage to covered property is caused by a *loss insured*, *we* will pay the reasonable increase in cost to repair or replace only the damaged property to maintain the *dwelling's* FORTIFIED HOME or FORTIFIED FOR SAFER LIVING certification in place at the time of the loss. This coverage does not increase the limit applying to the damaged property.

*We* will not pay:

a.　any increase in cost until the repair or replacement of the property is complete; or

b.　for increased costs resulting from enforcement of any ordinance or law regulating the construction or repair of the *dwelling* except as provided under **OPTIONAL POLICY PROVISIONS**, **Option OL – Building Ordinance or Law**.

This coverage does not apply if Loss Settlement provision A2 – Replacement Cost Loss Settlement – Common Construction is shown in the *Declarations*.

## INFLATION COVERAGE

The limits of liability shown in the *Declarations* for Coverage A, Coverage B, and when applicable, Option ID will be increased at the same rate as the increase in the Inflation Coverage Index shown in the *Declarations*.

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

To find the limits on a given date:

1.  divide the Index on that date by the Index as of the effective date of this Inflation Coverage provision; then

2.  multiply the resulting factor by the limits of liability for Coverage A, Coverage B, and Option ID separately.

The limits of liability will not be reduced to less than the amounts shown in the *Declarations*.

If during the term of this policy the Coverage A limit of liability is changed at *your* request, the effective date of this Inflation Coverage provision is changed to coincide with the effective date of such change.

# SECTION I – LOSSES INSURED

## COVERAGE A – DWELLING

*We* will pay for accidental direct physical loss to the property described in Coverage A, unless the loss is excluded or limited in **SECTION I – LOSSES NOT INSURED** or otherwise excluded or limited in this policy. However, loss does not include and *we* will not pay for, any *diminution in value*.

## COVERAGE B – PERSONAL PROPERTY

*We* will pay for accidental direct physical loss to the property described in Coverage B caused by the following perils, unless the loss is excluded or limited in **SECTION I – LOSSES NOT INSURED** or otherwise excluded or limited in this policy. However, loss does not include and *we* will not pay for, any *diminution in value*.

1.  **Fire or lightning.**

2.  **Windstorm or hail.**  This peril does not include loss to property contained in a structure caused by rain, snow, sleet, sand, or dust.  This limitation does not apply when the direct force of wind or hail damages the structure causing an opening in a roof or wall and the rain, snow, sleet, sand, or dust enters through this opening.

    This peril includes loss to watercraft of all types and their trailers, furnishings, equipment, and outboard motors, only while inside a *building structure*.

3.  **Explosion.**

4.  **Riot or civil commotion.**

5.  **Aircraft**, including self-propelled missiles and spacecraft.

6.  **Vehicles**, meaning accidental direct physical loss to covered property caused by the weight, force, power, or movement of a vehicle.

    a.  This includes:

        (1)  the impact of a vehicle;

        (2)  an object propelled from the tire or body of a vehicle;

        (3)  the upset or collision of a vehicle with a stationary object or other vehicle, including damage to personal property carried on the exterior of the vehicle; or

        (4)  a vehicle door or trunk lid being closed on personal property.

    b.  This peril does not include loss:

        (1)  to personal property that falls off a vehicle and strikes the ground, any other surface, or any object;

        (2)  caused by shifting of the load being carried in or on a vehicle; or

        (3)  to the vehicle itself unless the vehicle is property covered under **COVERAGE B – PERSONAL PROPERTY** and the loss is caused by the weight, force, power, or movement of another vehicle.

7.  **Smoke**, meaning abrupt and accidental damage from smoke.

    This peril does not include loss caused by smoke from agricultural smudging or industrial operations.

8.  **Vandalism or malicious mischief**, meaning only willful and malicious damage to or destruction of property.

9.  **Theft**, including attempted theft and loss of property from a known location when it is probable that the property has been stolen.

    This peril does not include:

    a.  loss of a precious or semi-precious stone from its setting;

    b.  loss caused by theft:

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

(1) committed by an **insured** or by any other person regularly residing on the **insured location**. Property of a student who is an **insured** is covered while located at a residence away from the **residence premises**, if the theft is committed by a person who is not an **insured**;

(2) in or to a dwelling under construction or of materials and supplies for use in the construction until the dwelling is completed and occupied; or

(3) from the part of a **residence premises** rented to others:

    (a) caused by a tenant, members of the tenant's household, or the tenant's employees unless the **residence premises** is rented, either completely or in part, for exclusive use as a residence, for no more than 30 nights in the 12-month period prior to the date of the loss;

    (b) of money, bank notes, bullion, gold, goldware, silver, silverware, pewterware, platinum, coins, and medals;

    (c) of securities, checks, cashiers checks, travelers checks, money orders, gift certificates, gift cards, rechargeable debit cards, phone cards, and other negotiable instruments, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, passports, tickets, and stamps; or

    (d) of jewelry, watches, fur garments and garments trimmed with fur, and precious and semi-precious stones; or

c. loss caused by theft that occurs away from the **residence premises** of:

(1) property while at any other residence owned, rented to, or occupied by an **insured**, except while an **insured** is temporarily residing there. Property of a student who is an **insured** is covered while at a residence away from the **residence premises**;

(2) watercraft of all types, including their furnishings, equipment, and outboard motors; or

(3) trailers and campers designed to be pulled by or carried on a vehicle.

If the **residence premises** is a newly acquired principal residence, property in the immediate past principal residence will not be considered property away from the **residence premises** for the first 30 days after the inception of this policy.

10. **Falling objects.** This peril does not include loss to property contained in a structure unless the roof or an exterior wall of the structure is first damaged by a falling object. Damage to the falling object itself is not included.

11. **Weight of ice, snow, or sleet** that causes damage to property contained in a structure.

12. **Abrupt and accidental discharge or overflow** of water, steam, or sewage from within a plumbing, heating, air conditioning, or automatic fire protective sprinkler system, or from within a household appliance.

This peril does not include loss:

a. to the system or appliance from which the water, steam, or sewage escaped;

b. caused by or resulting from:

    (1) freezing;

    (2) water or sewage from outside the **residence premises** plumbing system that enters through sewers or drains, or water that enters into and overflows from within a sump pump, sump pump well, or any other system designed to remove subsurface water that is drained from the foundation area; or

    (3) the pressure from or presence of tree, shrub, or plant roots; or

c. that occurs or develops over a period of time and is caused by or resulting from:

    (1) condensation or the presence of humidity, moisture, or vapor; or

    (2) seepage or leakage of water, steam, or sewage that is:

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

(a) continuous;

(b) repeating;

(c) gradual;

(d) intermittent;

(e) slow; or

(f) trickling.

13. **Abrupt and accidental tearing asunder, cracking, burning, or bulging** of a steam or hot water heating system, an air conditioning system, an automatic fire protective sprinkler system, or an appliance for heating water.

This peril does not include loss:

a. caused by or resulting from freezing; or

b. that occurs or develops over a period of time and is caused by or resulting from:

(1) condensation or the presence of humidity, moisture, or vapor; or

(2) seepage or leakage of water or steam that is:

(a) continuous;

(b) repeating;

(c) gradual;

(d) intermittent;

(e) slow; or

(f) trickling.

14. **Freezing** of a plumbing, heating, air conditioning, or automatic fire protective sprinkler system, or of a household appliance.

This peril does not include:

a. loss to a portable hot tub or portable spa unless **you** have used reasonable care to prevent freezing; or

b. loss on the **residence premises** unless **you** have used reasonable care to:

(1) maintain heat in the **building structure** at 55 degrees Fahrenheit or higher; or

(2) shut off the water supply and drain the system and appliances of water.

However, if the **building structure** is protected by an automatic fire protective sprinkler system, **you** must use reasonable care to continue the water supply and maintain heat in the **building structure** at 55 degrees Fahrenheit or higher for coverage to apply.

15. **Abrupt and accidental damage** to electrical appliances, devices, fixtures, and wiring from an increase or decrease of artificially generated electrical current. **We** will pay up to $3,000 under this peril for each damaged item described above.

16. **Breakage of glass**, meaning damage to personal property caused by breakage of glass that is a part of a structure on the **residence premises**. **We** will not pay for loss or damage to the glass.

17. **Wild bears or deer**, meaning damage caused by wild bears or deer to property located in a **building structure**.

## SECTION I – LOSSES NOT INSURED

1. **We** will not pay for any loss to the property described in Coverage A that consists of, or is directly and immediately caused by, one or more of the perils listed in items a. through m. below, regardless of whether the loss occurs abruptly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:

a. collapse, except as specifically provided in **SECTION I – ADDITIONAL COVERAGES, Collapse**;

b. freezing of a plumbing, heating, air conditioning, or automatic fire protective sprinkler system or

of a household appliance; or discharge, leakage, or overflow from within the system or appliance caused by freezing. This does not apply if **you** have used reasonable care to:

(1) maintain heat in the **building structure** at 55 degrees Fahrenheit or higher; or

(2) shut off the water supply and drain the system and appliances of water.

However, if the **building structure** is protected by an automatic fire protective sprinkler system, **you** must use reasonable care to continue the water supply and maintain heat in the

14

HW-2111

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

*building structure* at 55 degrees Fahrenheit or higher for coverage to apply;

c. freezing, thawing, pressure, or weight of water, ice, snow, or sleet, whether driven by wind or not, to:

(1) a swimming pool, hot tub, or spa, including their covers, filtration, and circulation systems; or

(2) an awning, fence, pavement, patio, foundation (including slabs, basement walls, crawl space walls, and footings), retaining wall, bulkhead, pier, wharf, or dock;

d. theft in or to a dwelling under construction, or of materials and supplies for use in the construction, until the dwelling is completed and occupied;

e. theft, vandalism, malicious mischief, or breakage of glass and safety glazing materials if the dwelling is a *vacant dwelling*;

f. seepage or leakage of water, steam, or sewage that occurs or develops over a period of time:

(1) and is:

(a) continuous;

(b) repeating;

(c) gradual;

(d) intermittent;

(e) slow; or

(f) trickling; and

(2) from a:

(a) heating, air conditioning, or automatic fire protective sprinkler system;

(b) household appliance; or

(c) plumbing system, including from, within or around any shower stall, shower bath, tub installation, or other plumbing fixture, including their walls, ceilings, or floors.

*We* also will not pay for losses arising from condensation or the presence of humidity, moisture, or vapor that occurs or develops over a period of time.

Item f. does not apply if the seepage or leakage of water, steam, or sewage is hidden from view within the walls, ceilings, or floors, and unknown by the *insured*;

g. wear, tear, decay, marring, scratching, deterioration, inherent vice, latent defect, or mechanical breakdown;

h. corrosion, electrolysis, or rust;

i. wet or dry rot;

j. contamination or pollution, meaning the presence, discharge, dispersal, seepage, migration, release, or escape of contaminants or pollutants at or from any source. This does not apply if the presence, discharge, dispersal, seepage, migration, release, or escape is itself caused by a peril described in **SECTION I – LOSSES INSURED, COVERAGE B – PERSONAL PROPERTY**.

(1) Contaminants and pollutants include but are not limited to any:

(a) solid, liquid, gaseous, or thermal irritant, including smoke from agricultural smudging or industrial operations, smog, soot, vapor, fumes, acids, alkalis, chemicals, pathogens, noxious substances, asbestos, or lead;

(b) contaminants or pollutants resulting from any natural resource extraction activities; or

(c) fuel oil except as specifically provided in **SECTION I – ADDITIONAL COVERAGES**, **Fuel Oil Release**.

(2) *We* also will not pay for:

(a) losses arising from contamination or pollution caused by or resulting from defective building materials, nuclear substances, and waste. Waste includes materials to be recycled, reconditioned, or reclaimed;

(b) the cost to extract contaminants or pollutants from land, water, or air, or the cost to remove, restore, or replace contaminated or polluted land, water, or air; or

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

    (c)  the cost of testing, monitoring, cleaning, removing, containing, treating, detoxifying, neutralizing, remediating, disposing of, or assessing the effects of contaminants or pollutants;

k.  settling, cracking, shrinking, bulging, or expansion of pavements, patios, foundations (including slabs, basement walls, crawl space walls, and footings), walls, floors, roofs, or ceilings;

l.  all animals, birds, or insects.

  (1)  This includes:

    (a)  nesting, infestation, gnawing, feeding, breeding, or discharge or release of waste products or secretions by animals, birds, or insects;

    (b)  costs to remove animals, birds, or insects from the covered property; and

    (c)  costs to prevent the animals, birds, or insects from returning to the property;

  (2)  However, **we** will pay for:

    (a)  losses caused by wild bears or deer; and

    (b)  the breakage of glass or safety glazing material that is a part of a ***building structure***, when caused by animals, birds, or insects; or

m.  pressure from or presence of tree, shrub, or plant roots.

However, **we** will pay for any resulting loss from items a. through l. unless the resulting loss is itself a Loss Not Insured as described in this Section.

2.  **We** will not pay for, under any part of this policy, any loss that would not have occurred in the absence of one or more of the following excluded events. **We** will not pay for such loss regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss; or (d) whether the event occurs abruptly or gradually, involves isolated or widespread damage, occurs on or off the ***residence premises***, arises from any natural or external forces, or occurs as a result of any combination of these:

a.  **Ordinance or Law**, meaning enforcement of any ordinance or law regulating the construction, repair, or demolition of a ***building structure*** or other structure.

b.  **Earth Movement**, meaning the sinking, rising, shifting, expanding, or contracting of earth, all regardless of whether combined with water, sewage, or any material carried by, or otherwise moved by the earth. Earth movement includes but is not limited to:

  (1)  earthquake;

  (2)  landslide, mudslide, or mudflow;

  (3)  sinkhole or subsidence;

  (4)  movement resulting from:

    (a)  improper compaction;

    (b)  site selection;

    (c)  natural resource extraction activities; or

    (d)  excavation;

  (5)  erosion;

  (6)  pressure by surface or subsurface earth or fill; or

  (7)  any volcanic activity, except as specifically provided in **SECTION I – ADDITIONAL COVERAGES, Volcanic Action**.

However, **we** will pay for any accidental direct physical loss by fire, explosion other than explosion of a volcano, or theft resulting from earth movement, provided the resulting loss is itself a ***loss insured***.

c.  **Water**, meaning:

  (1)  flood;

  (2)  surface water. This does not include water solely caused by the release of water from a swimming pool, spigot, sprinkler system, hose, or hydrant;

  (3)  waves (including tidal wave, tsunami, and seiche);

  (4)  tides or tidal water;

  (5)  overflow of any body of water (including any release, escape, or rising of any body

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

HW-2111

of water, or any water held, contained, controlled, or diverted by a dam, levee, dike, or any type of water containment, diversion, or flood control device);

(6) spray or surge from any of the items c.(1) through c.(5) described above, all whether driven by wind or not;

(7) water or sewage from outside the **residence premises** plumbing system that enters through sewers or drains, or water or sewage that enters into and overflows from within a sump pump, sump pump well, or any other system designed to remove subsurface water that is drained from the foundation area;

(8) water or sewage below the surface of the ground, including water or sewage that exerts pressure on, or seeps or leaks through a **building structure**, sidewalk, driveway, swimming pool, or other structure; or

(9) material carried or otherwise moved by any of the water or sewage, as described in items c.(1) through c.(8) above.

However, **we** will pay for any accidental direct physical loss by fire, explosion, or theft resulting from water, provided the resulting loss is itself a **loss insured**.

d. **Neglect**, meaning neglect of the **insured** to use all reasonable means to save and preserve property at and after the time of a loss, or when property is endangered.

e. **War**, including any undeclared war, civil war, insurrection, rebellion, revolution, warlike act by a military force or military personnel, destruction or seizure or use for a military purpose, and including any consequence of any of these. Discharge of a nuclear weapon will be considered a warlike act even if accidental.

f. **Nuclear Hazard**, meaning any nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these. Loss caused by the nuclear hazard will not be

considered loss caused by fire, explosion, or smoke.

However, **we** will pay for any accidental direct physical loss by fire resulting from the nuclear hazard, provided the resulting fire loss is itself a **loss insured**.

g. **Fungus**, including:

(1) any loss of use or delay in rebuilding, repairing, or replacing covered property, including any associated cost or expense, due to interference at the **residence premises** or location of the rebuilding, repair, or replacement of that property, by **fungus**;

(2) any remediation of **fungus**, including the cost or expense to:

(a) remove the **fungus** from covered property or to repair, restore, or replace that property;

(b) tear out and replace any part of the **building structure** or other property as needed to gain access to the **fungus**; or

(c) contain, treat, detoxify, neutralize or dispose of or in any way respond to or assess the effects of the **fungus**; or

(3) the cost of any testing or monitoring of air or property to confirm the type, absence, presence, or level of **fungus**, whether performed prior to, during, or after removal, repair, restoration, or replacement of covered property.

However, item g. does not apply if **fungus** results from an accidental direct physical loss caused by fire or lightning.

h. **Intentional Losses.** If any **insured** intentionally causes or procures a loss to property covered under this policy, **we** will not pay any **insured** for this loss. This applies regardless of whether the **insured** is charged with or convicted of a crime.

17

HW-2111

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

This does not apply to:

(1) an *insured* who did not participate in, co-operate in, or contribute to causing or procuring the loss; or

(2) a claim of an innocent *insured*, to the extent of the innocent *insured's* interest in the covered property, if the loss:

(a) arises out of family violence against an innocent *insured*; and

(b) is caused by an intentional act of an *insured* against whom a family violence complaint is brought.

3. *We* will not pay for, under any part of this policy, any loss consisting of one or more of the items below. Further, *we* will not pay for any loss described in paragraphs 1. and 2. immediately above regardless of whether one or more of the following: (a) directly or indirectly cause, contribute to, or aggravate the loss; or (b) occur before, at the same time, or after the loss or any other cause of the loss:

a. conduct, act, failure to act, or decision of any person, group, organization, or governmental body whether intentional, wrongful, negligent, or without fault;

b. defect, weakness, inadequacy, fault, or unsoundness in:

(1) planning, zoning, development, surveying, or siting;

(2) design, specifications, workmanship, repair, construction, renovation, remodeling, grading, or compaction;

(3) materials used in repair, construction, renovation, remodeling, grading, or compaction; or

(4) maintenance;

of any property (including land, structures, or improvements of any kind) whether on or off the *residence premises*; or

c. weather conditions.

However, *we* will pay for any resulting loss from items 3.a., 3.b., and 3.c. unless the resulting loss is itself a Loss Not Insured as described in this Section.

# SECTION I – LOSS SETTLEMENT

Only the **Loss Settlement Provisions** shown in the *Declarations* apply. *We* will settle covered property losses according to the following. However, the valuation of any covered property losses does not include, and *we* will not pay, any amount for *diminution in value*.

## COVERAGE A – DWELLING

1. **A1 – Replacement Cost Loss Settlement – Similar Construction.**

a. *We* will pay the cost to repair or replace with similar construction and for the same use on the premises shown in the *Declarations*, the damaged part of the property covered under **SECTION I – PROPERTY COVERAGES, COVERAGE A – DWELLING**, except for wood fences, subject to the following:

(1) until actual repair or replacement is completed, *we* will pay only the *actual cash value* of the damaged part of the property, up to the applicable limit of liability shown in the *Declarations*, not to exceed the cost to repair or replace the damaged part of the property;

(2) when the repair or replacement is actually completed, *we* will pay the covered additional amount *you* actually and necessarily spend to repair or replace the damaged part of the property, or an amount up to the applicable limit of liability shown in the *Declarations*, whichever is less;

(3) to receive any additional payments on a replacement cost basis, *you* must complete the actual repair or replacement of the damaged part of the property within two years after the date of loss, and notify *us* within 30 days after the work has been completed; and

(4) *we* will not pay for increased costs resulting from enforcement of any ordinance or

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

law regulating the construction, repair, or demolition of a *building structure* or other structure, except as provided under **OPTIONAL POLICY PROVISIONS**, **Option OL – Building Ordinance or Law**.

b. Wood Fences: ***We*** will pay the ***actual cash value*** for loss or damage to wood fences, not to exceed the limit of liability shown in the ***Declarations*** for **COVERAGE A – Other Structures**.

2. **A2 – Replacement Cost Loss Settlement – Common Construction.**

a. ***We*** will pay the cost to repair or replace with common construction and for the same use on the premises shown in the ***Declarations***, the damaged part of the property covered under **SECTION I – PROPERTY COVERAGES**, **COVERAGE A – DWELLING**, except for wood fences, subject to the following:

(1) ***we*** will pay only for repair or replacement of the damaged part of the property with common construction techniques and materials commonly used by the building trades in standard new construction. ***We*** will not pay the cost to repair or replace obsolete, antique, or custom construction with like kind and quality;

(2) until actual repair or replacement is completed, ***we*** will pay only the ***actual cash value*** of the damaged part of the property, up to the applicable limit of liability shown in the ***Declarations***, not to exceed the cost to repair or replace the damaged part of the property as described in a.(1) above;

(3) when the repair or replacement is actually completed as described in a.(1) above, ***we*** will pay the covered additional amount ***you*** actually and necessarily spend to repair or replace the damaged part of the property, or an amount up to the applicable limit of liability shown in the ***Declarations***, whichever is less;

(4) to receive any additional payments on a replacement cost basis, ***you*** must complete the actual repair or replacement of the damaged part of the property within

two years after the date of loss, and notify ***us*** within 30 days after the work has been completed; and

(5) ***we*** will not pay for increased costs resulting from enforcement of any ordinance or law regulating the construction, repair, or demolition of a ***building structure*** or other structure, except as provided under **OPTIONAL POLICY PROVISIONS**, **Option OL – Building Ordinance or Law**.

b. Wood Fences: ***We*** will pay the ***actual cash value*** for loss or damage to wood fences, not to exceed the limit of liability shown in the ***Declarations*** for **COVERAGE A – Other Structures**.

**COVERAGE B – PERSONAL PROPERTY**

1. **B1 – Limited Replacement Cost Loss Settlement.**

a. ***We*** will pay the cost to repair or replace property covered under **SECTION I – PROPERTY COVERAGES**, **COVERAGE B – PERSONAL PROPERTY**, except for property listed in item b. below, subject to the following:

(1) until repair or replacement is completed, ***we*** will pay only the ***actual cash value*** of the damaged property;

(2) after repair or replacement is completed, ***we*** will pay the difference between the ***actual cash value*** and the cost ***you*** have actually and necessarily spent to repair or replace the property; and

(3) if property is not repaired or replaced within two years after the date of loss, ***we*** will pay only the ***actual cash value***.

b. ***We*** will pay market value at the time of loss for:

(1) antiques, fine arts, paintings, statuary, and similar articles which by their inherent nature cannot be replaced with new articles;

(2) articles whose age or history contribute substantially to their value including, but not limited to, memorabilia, souvenirs, and collectors items; and

(3) property not useful for its intended purpose.

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

HW-2111

However, **we** will not pay an amount exceeding the smallest of the following for items a. and b. above:

(1)  **our** cost to replace at the time of loss;

(2)  the full cost of repair;

(3)  any special limit of liability described in this policy; or

(4)  any applicable Coverage B limit of liability.

2.  **B2 – Depreciated Loss Settlement.**

a.  **We** will pay the **actual cash value** for property covered under **SECTION I – PROPERTY COVERAGES**, **COVERAGE B – PERSONAL PROPERTY**, except for property listed in item b. below.

b.  **We** will pay market value at the time of loss for:

(1)  antiques, fine arts, paintings, statuary, and similar articles which by their inherent nature cannot be replaced with new articles;

(2)  articles whose age or history contribute substantially to their value including, but not limited to, memorabilia, souvenirs, and collectors items; and

(3)  property not useful for its intended purpose.

However, **we** will not pay an amount exceeding the smallest of the following for items a. and b. above:

(1)  **our** cost to replace at the time of loss;

(2)  the full cost of repair;

(3)  any special limit of liability described in this policy; or

(4)  any applicable Coverage B limit of liability.

## SECTION I – CONDITIONS

1.  **Insurable Interest and Limit of Liability.**  Even if more than one person has an insurable interest in the property covered, **we** will not be liable:

a.  to the **insured** for an amount greater than the **insured's** interest; or

b.  for more than the applicable limit of liability.

2.  **Your Duties After Loss.**  After a loss to which this insurance may apply, **you** must cooperate with **us** in the investigation of the claim and also see that the following duties are performed:

a.  give immediate notice to **us** or **our** agent and also notify:

(1)  the police if the loss is caused by theft, vandalism, or any other criminal act; and

(2)  the credit card company or bank if the loss involves a credit card or bank fund transfer card;

b.  protect the property from further damage or loss and also:

(1)  make reasonable and necessary temporary repairs required to protect the property; and

(2)  keep an accurate record of repair expenses;

c.  prepare an inventory of damaged or stolen personal property:

(1)  showing in detail the quantity, description, age, replacement cost, and amount of loss; and

(2)  attaching all bills, receipts, and related documents that substantiate the figures in the inventory;

d.  as often as **we** reasonably require:

(1)  exhibit the damaged property;

(2)  provide **us** with any requested records and documents and allow **us** to make copies;

(3)  while not in the presence of any other **insured**:

(a)  give statements; and

(b)  submit to examinations under oath; and

(4)  produce employees, members of the **insured's** household, or others for examination under oath to the extent it is within the **insured's** power to do so; and

e.  submit to **us**, within 60 days after the loss, **your** signed, sworn proof of loss that sets forth, to the best of **your** knowledge and belief:

© Copyright, State Farm Mutual Automobile Insurance Company, 2017
HW-2111

(1) the time and cause of loss;

(2) interest of the *insured* and all others in the property involved and all encumbrances on the property;

(3) other insurance that may cover the loss;

(4) changes in title or occupancy of the property during the term of this policy;

(5) specifications of any damaged structure and detailed estimates for repair of the damage;

(6) an inventory of damaged or stolen personal property described in 2.c.;

(7) receipts for additional living expenses incurred and records supporting the fair rental value loss; and

(8) evidence or affidavit supporting a claim under **SECTION I – ADDITIONAL COVERAGES**, **Credit Card, Bank Fund Transfer Card, Forgery, and Counterfeit Money** coverage, stating the amount and cause of loss.

3. **Loss to a Pair or Set.** In case of loss to a pair or set, *we* may choose to:

   a. repair or replace any part to restore the pair or set to its value before the loss; or

   b. pay the difference between the depreciated value of the property before the loss and the depreciated value of the property after the loss.

4. **Appraisal.** If *you* and *we* fail to agree on the amount of loss, either party can demand that the amount of the loss be set by appraisal. Only *you* or *we* may demand appraisal. A demand for appraisal must be in writing. *You* must comply with **SECTION I – CONDITIONS**, **Your Duties After Loss** before making a demand for appraisal. At least 10 days before demanding appraisal, the party seeking appraisal must provide the other party with written, itemized documentation of a specific dispute as to the amount of the loss, identifying separately each item being disputed.

   a. Each party will select a competent, disinterested appraiser and notify the other party of

the appraiser's identity within 20 days of receipt of the written demand for appraisal.

b. The appraisers will then attempt to set the amount of the loss of each item in dispute as specified by each party, and jointly submit to each party a written report of agreement signed by them. In all instances the written report of agreement will be itemized and state separately the *actual cash value*, replacement cost, and if applicable, the market value of each item in dispute.

The written report of agreement will set the amount of the loss of each item in dispute.

c. If the two appraisers fail to agree upon the amount of the loss within 30 days, unless the period of time is extended by mutual agreement, they will select a competent, disinterested umpire and will submit their differences to the umpire. If the appraisers are unable to agree upon an umpire within 15 days:

   (1) *you* or *we* may make a written application for a judge of a court of record in the same state and county (or city if the city is not within a county) where the *residence premises* is located to select an umpire;

   (2) the party requesting the selection described in item c.(1) must provide the other party:

      (a) written notice of the intent to file, identifying the specific location and identity of the court at least 10 days prior to submission of the written application; and

      (b) a copy of the written application; and

   (3) a written report of agreement, as required in item b., signed by any two (appraisers or appraiser and umpire) will set the amount of the loss of each item in dispute. In all instances the written report of agreement will be itemized and state separately the *actual cash value*, replacement cost, and if applicable, the market value of each item in dispute.

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

d. To qualify as an appraiser or umpire for a loss to property described in **COVERAGE A – DWELLING**, a person must be one of the following and be licensed or certified as required by the applicable jurisdiction:

(1) an engineer or architect with experience and training in building construction, repair, estimating, or investigation of the type of property damage in dispute;

(2) an adjuster or public adjuster with experience and training in estimating the type of property damage in dispute; or

(3) a contractor with experience and training in the construction, repair, and estimating of the type of property damage in dispute.

e. A person may not serve as an appraiser or umpire if that person, any employee of that person, that person's employer, or any employee of their employer:

(1) has performed services for either party with respect to the claim at issue in the appraisal; or

(2) has a financial interest in the outcome of the claim at issue in the appraisal.

f. Each party will be responsible for the compensation of their selected appraiser. Reasonable expenses of the appraisal and the reasonable compensation of the umpire will be paid equally by **you** and **us**.

g. **You** and **we** do not waive any rights by demanding or submitting to an appraisal, and retain all contractual rights to determine if coverage applies to each item in dispute.

h. Appraisal is only available to determine the amount of the loss of each item in dispute. The appraisers and the umpire have no authority to decide:

(1) any other questions of fact;

(2) questions of law;

(3) questions of coverage;

(4) other contractual issues; or

(5) to conduct appraisal on a class-wide basis.

i. Appraisal is a non-judicial proceeding and does not provide for or require arbitration. Neither party will be awarded attorney fees. The appraisal award may not be entered as a judgment in a court.

j. A party may not demand appraisal after that party brings suit or action against the other party relating to the amount of loss.

5. **Other Insurance.** If a loss covered by this policy is also covered by other insurance, **we** will pay only **our** share of the loss. **Our** share is the proportion of the loss that the applicable limit under this policy bears to the total amount of insurance covering the loss.

6. **Suit Against Us.** No action will be brought against **us** unless there has been full compliance with all of the policy provisions. Any action by any party must be started within one year after the date of loss or damage.

However, if the action results from a loss caused by fire or lightning, the action must be started within two years after the date of loss or damage.

7. **Our Option.** **We** may repair or replace any part of the property damaged or stolen with similar property. Any property **we** pay for or replace becomes **our** property.

8. **Loss Payment.** **We** will adjust all losses with **you**. **We** will pay **you** unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days after **we** receive **your** proof of loss and:

a. reach agreement with **you**;

b. there is an entry of a final judgment; or

c. there is a filing of an appraisal award with **us**.

9. **Abandonment of Property.** **We** need not accept any property abandoned by an **insured**.

10. **Mortgagee Clause.** The word "mortgagee" includes trustee.

a. If a mortgagee is named in this policy, any loss payable under Coverage A will be paid to the mortgagee and **you**, as interests appear. If more than one mortgagee is named, the order of payment will be the same as the order of precedence of the mortgages.

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

b. If **we** deny **your** claim that denial will not apply to a valid claim of the mortgagee, if the mortgagee:

(1) notifies **us** of any change in ownership, occupancy, or substantial change in risk of which the mortgagee is aware;

(2) pays on demand any premium due under this policy, if **you** have not paid the premium; and

(3) submits a signed, sworn statement of loss within 60 days after receiving notice from **us** of **your** failure to do so. Policy conditions relating to **Appraisal**, **Suit Against Us**, and **Loss Payment** apply to the mortgagee.

c. If **we** cancel this policy, the mortgagee will be notified at least 10 days before the date cancellation takes effect. Proof of mailing will be proof of notice.

d. If **we** pay the mortgagee for any loss and deny payment to **you**:

(1) **we** are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

(2) at **our** option, **we** may pay to the mortgagee the whole principal on the mortgage

plus any accrued interest. In this event, **we** will receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.

e. Subrogation does not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

11. **No Benefit to Bailee.** **We** will not recognize an assignment or grant coverage for the benefit of a person or organization holding, storing, or transporting property for a fee. This applies regardless of any other provision of this policy.

12. **Recovered Property.** If either **you** or **we** recover any property after loss settlement, that party must give the other prompt notice. At **your** option, **you** may keep the property or **we** will return it to **you**. Otherwise, it will become **our** property. If **you** choose to keep the property, the loss payment will be adjusted based on the amount **you** received for the recovered property.

13. **Assignment of Claim.** Assignment to another party of any of **your** rights or duties under this policy regarding any claim, or any part of any claim, will be void and **we** will not recognize any such assignment, unless **we** give **our** written consent. However, once **you** have complied with all policy provisions, **you** may assign to another party, in writing, payment of claim proceeds otherwise payable to **you**.

## SECTION II – LIABILITY COVERAGES

### COVERAGE L – PERSONAL LIABILITY

If a claim is made or a suit is brought against an **insured** for damages because of **bodily injury** or **property damage** to which this coverage applies, caused by an **occurrence**, **we** will:

1. pay up to **our** limit of liability for the damages for which the **insured** is legally liable. **We** will not pay for criminal restitution; and

2. provide a defense at **our** expense by counsel of **our** choice. **We** may make any investigation and settle any claim or suit that **we** decide is appropriate. **Our** obligation to defend any suit ends when the amount **we** pay for damages, to effect settlement or satisfy a judgment resulting from the **occurrence**, equals **our** limit of liability. **We** will not provide a defense to any **insured** for criminal prosecution or proceedings.

### COVERAGE M – MEDICAL PAYMENTS TO OTHERS

**We** will pay the necessary medical expenses incurred or medically ascertained within three years from the date of an accident causing **bodily injury**. Medical expenses means reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, rehabilitation, pharmaceuticals, orthopedic devices, prosthetic devices, and funeral services. This coverage applies only:

1. to a person on the **insured location** with the permission of an **insured**;

2. to a person off the **insured location**, if the **bodily injury**:

a. arises out of a condition on the **insured location** or the ways immediately adjoining;

23

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

HW-2111

b. is caused by the activities of an *insured*;

c. is caused by a *residence employee* in the course of the *residence employee's* employment by an *insured*; or

d. is caused by an animal owned by or in the care of an *insured*; or

3. to a *residence employee* if the *occurrence* causing *bodily injury* occurs off the *insured location* and arises out of or in the course of the *residence employee's* employment by an *insured*.

## SECTION II – ADDITIONAL COVERAGES

The following Additional Coverages are subject to all the terms, provisions, exclusions, and conditions of this policy.

*We* will pay for the following in addition to the limits of liability:

1. **Claim Expenses.** *We* will pay:

   a. expenses *we* incur and costs taxed against an *insured* in suits *we* defend. Taxed costs do not include attorney fees;

   b. premiums on bonds required in suits *we* defend, but not for bond amounts greater than the Coverage L limit. *We* are not obligated to apply for or furnish any bond;

   c. reasonable expenses an *insured* incurs at *our* request. This includes actual loss of earnings (but not loss of other income) up to $250 per day for aiding *us* in the investigation or defense of claims or suits;

   d. interest the *insured* is legally liable to pay on damages payable under Coverage L above before a judgment, but only the interest on the lesser of:

      (1) that part of the damages *we* pay; or

      (2) the Coverage L limit; and

   e. interest on the entire judgment that accrues after entry of the judgment and before *we* pay or tender, or deposit in court that part of the judgment that does not exceed the limit of liability that applies.

2. **First Aid Expenses.** *We* will pay expenses for first aid to others incurred by an *insured* for *bodily injury*

covered under this policy. *We* will not pay for first aid to *you* or any other *insured*.

3. **Damage to Property of Others.**

   a. *We* will pay for *property damage* to property of others caused by the activities of an *insured*.

   b. *We* will not pay more than the smallest of the following amounts:

      (1) replacement cost at the time of loss;

      (2) full cost of repair; or

      (3) the limit of liability shown in the *Declarations* for **Damage to Property of Others** for any one *occurrence*.

   c. *We* will not pay for *property damage*:

      (1) for a loss that is recoverable under Section I of this policy. *We* also will not pay for any applicable deductible regardless of whether the amount of the loss exceeds the deductible;

      (2) caused intentionally by an *insured* 13 years of age or older;

      (3) to property, other than a rented golf cart, owned by, or rented to an *insured*, a tenant of an *insured*, or a resident in *your* household;

      (4) arising out of:

         (a) *business* pursuits;

         (b) any act or omission in connection with a premises an *insured* owns, rents, or controls, other than the *insured location*;

         (c) a condition on the *insured location* or the ways immediately adjoining; or

         (d) the ownership, maintenance, or use of a *motor vehicle*, aircraft, or watercraft, including airboat, air cushion, personal watercraft, sail board, or similar type watercraft; or

      (5) if a payment is made under **COVERAGE L – PERSONAL LIABILITY** for the same *property damage*.

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

# SECTION II – EXCLUSIONS

1. Coverage L and Coverage M do not apply to:

   a. **bodily injury** or **property damage** that:

      (1) was a result of a:

         (a) willful and malicious; or

         (b) criminal;

         act or omission of the **insured**;

      (2) was intended by the **insured**; or

      (3) would have been expected by the **insured** based on a reasonable person standard.

      However, exclusions a.(2) and a.(3) above do not apply to **bodily injury** or **property damage** resulting from the use of reasonable force to protect persons or property.

      Exclusions a.(1), a.(2), and a.(3) above apply to all **bodily injury** or **property damage** even if the:

      (1) **bodily injury** or **property damage** was sustained by a different person, entity, or property than was expected or intended;

      (2) **bodily injury** or **property damage** was of a different kind, quality, or degree than was expected or intended;

      (3) **insured** lacked the mental capacity to control his or her conduct;

      (4) **insured** was not charged with or convicted of a criminal act or omission; or

      (5) **insured** was impaired by drugs or alcohol;

   b. **bodily injury** or **property damage** arising out of **business** pursuits of any **insured**, except as provided in item c. below. This exclusion does not apply to activities that are ordinarily incident to non-**business** pursuits;

   c. **bodily injury** or **property damage** arising out of the rental of any part of any premises by any **insured**. This exclusion does not apply:

      (1) to the rental of the **residence premises**:

         (a) either completely or in part, for exclusive use as a residence, for up to 30

nights in the 12-month period prior to the date of the loss;

         (b) in part, for use as a permanent residence, by either one or two full-time roomers or boarders; or

         (c) in part, as an office, school, studio, or private garage;

      (2) when the **dwelling** on the **residence premises** is a two, three, or four family **dwelling** and **you** occupy one part and rent the other part to others;

      (3) to farm land (without buildings), rented to others, but not to exceed a total of 500 acres, regardless of the number of locations; or

      (4) to activities that are ordinarily incident to non-**business** pursuits;

   d. **bodily injury** or **property damage** arising out of the rendering or failing to render professional services;

   e. **bodily injury** or **property damage** arising out of any premises currently owned or rented to any **insured** which is not an **insured location**. This exclusion does not apply to **bodily injury** to a **residence employee** arising out of and in the course of the **residence employee's** employment by an **insured**;

   f. **bodily injury** or **property damage** arising out of the ownership, maintenance, use, loading, or unloading of:

      (1) an aircraft. This exclusion does not apply to the ownership, maintenance, use, loading, or unloading of unmanned aircraft systems used as model aircraft:

         (a) solely for recreational or hobby purposes;

         (b) designed to be operated within the visual line of sight of the operator and operated within the visual line of sight of the operator; and

25

HW-2111

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

(c) weighing not more than 55 pounds at the time of operation;

unless the ownership, maintenance, use, loading, or unloading of such aircraft results in:

(a) *property damage* to any aircraft; or

(b) *bodily injury* or *property damage* resulting from interference with an aircraft carrying people regardless of whether the *bodily injury* or *property damage* is sustained by people or property on the aircraft or not;

(2) a *motor vehicle* owned or operated by or rented or loaned to any *insured*; or

(3) a watercraft:

(a) owned by or rented to any *insured* if it has inboard or inboard-outdrive motor power of more than 50 horsepower;

(b) owned by or rented to any *insured* if it is a sailing vessel, with or without auxiliary power, 26 feet or more in overall length;

(c) powered by one or more outboard motors with more than 25 total horsepower owned by any *insured*;

(d) designated as an airboat, air cushion, or similar type of craft; or

(e) owned by any *insured* if it is a personal watercraft using a water jet pump powered by an internal combustion engine as the primary source of propulsion.

This exclusion does not apply to *bodily injury* to a *residence employee* arising out of and in the course of the *residence employee's* employment by an *insured*. Exclusion f.(3) does not apply while the watercraft is on the *residence premises*;

g. *bodily injury* or *property damage* arising out of:

(1) the entrustment by any *insured* to any person;

(2) the supervision by any *insured* of any person;

(3) any liability statutorily imposed on any *insured*; or

(4) any liability assumed through an unwritten or written agreement by any *insured*;

with regard to the ownership, maintenance, or use of any aircraft, watercraft, or *motor vehicle* not covered under Section II of this policy;

h. *bodily injury* or *property damage* caused directly or indirectly by war, including undeclared war, or any warlike act including destruction, seizure, or use for a military purpose, or any consequence of these. Discharge of a nuclear weapon will be considered a warlike act even if accidental;

i. *bodily injury* to any *insured* within the meaning of part 9.a., 9.b., or 9.c. of the definition of *insured*.

This exclusion also applies to any claim made or suit brought against any *insured* within the meaning of part 9.a., 9.b., or 9.c. of the definition of *insured* to share damages with or repay someone else who may be obligated to pay damages because of the *bodily injury* sustained by any *insured* within the meaning of part 9.a., 9.b., or 9.c. of the definition of *insured*;

j. any claim made or suit brought against any *insured* by:

(1) any person in the care of any *insured* because of child care services provided by or at the direction of:

(a) any *insured*;

(b) any employee of any *insured*; or

(c) any other person actually or apparently acting on behalf of any *insured*; or

(2) any person who makes a claim because of *bodily injury* to any person in the care of any *insured* because of child care services provided by or at the direction of:

(a) any *insured*;

© Copyright, State Farm Mutual Automobile Insurance Company, 2017
HW-2111

(b)  any employee of any *insured*; or

(c)  any other person actually or apparently acting on behalf of any *insured*.

This exclusion does not apply to the occasional child care services provided by any *insured*, or to the part-time child care services provided by any *insured* under 19 years of age;

k.  *bodily injury* or *property damage* arising out of an *insured's* participation in, or preparation or practice for, any prearranged or organized race, speed or demolition contest, or similar competition involving a motorized land vehicle or motorized watercraft. This exclusion does not apply to a sailing vessel less than 26 feet in overall length with or without auxiliary power;

l.  *bodily injury* or *property damage* arising out of the use, sale, manufacture, distribution, delivery, transfer, or possession, by any *insured*, of any substance that is illegal or is a controlled substance under either federal or state law.

This exclusion does not apply to:

(1)  the legitimate use of legally prescribed drugs, under either federal or state law, by a person following orders of a licensed health care professional; or

(2)  an *insured* who did not knowingly participate or cooperate in the acts described in paragraph l. above;

m.  *bodily injury* or *property damage* arising out of any actual, alleged, or threatened:

(1)  sexual harassment, sexual molestation, or sexual misconduct;

(2)  physical or mental abuse; or

(3)  corporal punishment;

by the *insured*;

n.  *bodily injury* or *property damage* arising out of the actual, alleged, or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any *fungus* at or from any source or location.

*We* also do not cover any loss, cost, or expense arising out of any:

(1)  request, demand, order, or statutory or regulatory requirement that any *insured* or others test for, monitor, clean up, remove, contain, treat, detoxify, neutralize, remediate, dispose of, or in any way respond to or assess the effects of *fungus*; or

(2)  claim or suit for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating, disposing of, or in any way responding to or assessing the effects of *fungus*; or

o.  *bodily injury* or *property damage* arising out of the ownership, maintenance, or use of systems and equipment used to generate electrical power exceeding 125 percent of the actual electrical power usage by the *residence premises* in the 12-month period prior to the date of the loss.

2.  Coverage L does not apply to:

a.  liability:

(1)  for *your* share of any loss assessment charged against all members of any type of association of property owners; or

(2)  imposed on or assumed by any *insured* through any unwritten or written contract or agreement. This exclusion does not apply to liability for damages that the *insured* would have in absence of the contract or agreement;

b.  *property damage* to property owned by any *insured* at the time of the *occurrence*;

c.  *property damage* to property rented to, used or occupied by, or in the care, custody, or control of any *insured* at the time of the *occurrence*. This exclusion does not apply to *property damage* caused by fire, smoke, explosion, or abrupt and accidental damage from water;

d.  *bodily injury* to a person eligible to receive any benefits required to be provided or voluntarily provided by an *insured* under a workers'

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

compensation, non-occupational disability, or occupational disease law;

e. **bodily injury** or **property damage** for which an **insured** under this policy is also an insured under a nuclear energy liability policy or would be an insured but for its termination upon exhaustion of its limit of liability. A nuclear energy liability policy is a policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada, or any of their successors;

f. **bodily injury** or **property damage** arising out of any real property any **insured** has sold or transferred. This includes but is not limited to **bodily injury** or **property damage** arising out of known, unknown, hidden, or alleged property conditions, problems, or defects.

This exclusion also applies to any **property damage** to the sold or transferred real property itself.

However, this exclusion does not apply to:

(1) **bodily injury** arising out of fire, smoke, explosion, electrocution, or carbon monoxide poisoning; or

(2) **property damage** arising out of fire, smoke, or explosion.

3. Coverage M does not apply to **bodily injury**:

a. to a **residence employee** if it occurs off the **insured location** and does not arise out of or in the course of the **residence employee's** employment by an **insured**;

b. to a person eligible to receive any benefits required to be provided or voluntarily provided under any workers' compensation, non-occupational disability, or occupational disease law;

c. to a person other than a **residence employee** of an **insured**, regularly residing on any part of the **insured location**; or

d. from nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these.

## SECTION II – CONDITIONS

1. **Limit of Liability.** The Coverage L limit is shown in the **Declarations**. This is the limit for all damages from each **occurrence** for the policy period in which the **bodily injury** or **property damage** first occurs, regardless of the number of **insureds**, claims made, or persons injured. No additional limits or coverage will be available for the **occurrence** under any additional policy periods while this policy remains in force.

The Coverage M limit is shown in the **Declarations**. This is **our** limit for all medical expenses for **bodily injury** to one person as the result of one accident.

2. **Severability of Insurance.** This insurance applies separately to each **insured**. This condition does not increase **our** limit of liability for any one **occurrence**.

3. **Duties After Loss.** In case of an accident or **occurrence**, the **insured** must cooperate with **us** in the investigation, settlement, or defense of any claim or suit and also perform the following duties

that apply. **You** must cooperate with **us** in seeing that these duties are performed:

a. give written notice to **us** or **our** agent as soon as possible, which sets forth:

(1) the identity of this policy and the **insured**;

(2) reasonably available information on the time, place, and circumstances of the accident or **occurrence**; and

(3) names and addresses of any claimants and available witnesses;

b. immediately forward to **us** every notice, demand, summons, or other process relating to the accident or **occurrence**;

c. at **our** request, assist in:

(1) making settlement;

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

(2) the enforcement of any right of contribution or indemnity against a person or organization who may be liable to an **insured**;

(3) the conduct of suits and attend hearings and trials; and

(4) securing and giving evidence and obtaining the attendance of witnesses;

d. under **SECTION II – ADDITIONAL COVER-AGES**, **Damage to Property of Others**, exhibit the damaged property if within the **insured's** control; and

e. the **insured** must not, except at the **insured's** own cost, voluntarily make payments, assume obligations, or incur expenses. This does not apply to expense for first aid to others at the time of the **bodily injury**.

4. **Coverage M Requirements.** **We** may require the following in regard to any Coverage M claim:

a. written proof of claim, under oath if required, as soon as possible from the injured person, or when appropriate, someone acting on behalf of that person;

b. the injured person's submission to physical examinations by a physician selected by **us** when and as often as **we** reasonably require; and

c. any authorizations from the injured person as **we** may require.

5. **Payment of Claim – Coverage M or Damage to Property of Others.** Payment under either of these is not an admission of liability by an **insured** or **us**.

6. **Suit Against Us.** No action will be brought against **us** unless there has been compliance with the policy provisions.

No one will have the right to join **us** as a party to an action against an **insured**. Further, no action with respect to Coverage L will be brought against **us** until the obligation of the **insured** has been determined by final judgment on the merits, after an actual trial or by an agreement signed by **us**; but **we** will not be liable for damages that are not payable under the terms of this policy or that are in excess of the applicable Limit of Liability.

7. **Bankruptcy of an Insured.** Bankruptcy or insolvency of an **insured** will not relieve **us** of **our** obligation under this policy.

8. **Other Insurance – Coverage L.** This insurance is excess over any other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

# SECTION I AND SECTION II – CONDITIONS

1. **Policy Period.** This policy applies only to loss under Section I or **bodily injury** or **property damage** under Section II that occurs during the period this policy is in effect.

2. **Concealment or Fraud.**

a. This policy is void as to **you** and any other **insured** if **you** or any other **insured** under this policy has intentionally concealed or misrepresented any material fact or circumstance relating to this insurance, whether before or after a loss.

However, this condition applies only to facts or circumstances:

(1) on which **we** rely and are either:

(a) material; or

(b) made with intent to deceive; or

(2) that contribute to the loss.

b. No failure of a policy condition before the loss and no breach of a promissory warranty affects **our** obligations under this policy unless such failure or breach exists at the time of loss and either:

(1) increases the risk at the time of loss; or

(2) contributes to the loss.

Item 2.b. does not apply to failure to tender payment of premium.

c. Violation of this condition by an **insured** does not apply to a claim of an innocent **insured**, to

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

the extent of the innocent *insured's* interest in the covered property, if the loss:

(1) arises out of family violence against an innocent *insured*; and

(2) is caused by an intentional act of an *insured* against whom a family violence complaint is brought.

3. **Liberalization Clause.** If *we* adopt any revision that would broaden coverage under this policy without additional premium, within 60 days prior to or during the period this policy is in effect, the broadened coverage will immediately apply to this policy.

4. **Waiver or Change of Policy Provisions.** A waiver or change of any provision of this policy must be in writing by *us* to be valid. *Our* request for an appraisal or examination does not waive any of *our* rights.

5. **Cancellation.**

a. *You* may cancel this policy at any time by giving *us* advance written notice of the date cancellation is to take effect. If only *your* interest is affected, the effective date of cancellation will be the later of:

(1) the date *we* receive *your* notice of cancellation; or

(2) the date specified in the notice.

However, upon receipt of *your* notice of cancellation, *we* may waive the requirement that the notice be in writing by confirming the date and time of cancellation to *you* in writing.

b. *We* may cancel this policy only for the reasons stated in this condition. *We* will notify *you* in writing of the date cancellation takes effect. This cancellation notice may be delivered to *you*, or mailed to *you* at *your* mailing address shown in the *Declarations*. Proof of mailing will be sufficient proof of notice:

(1) When *you* have not paid the premium, *we* may cancel at any time by notifying *you* at least 10 days before the date cancellation takes effect. This condition applies whether the premium is payable to *us* or

*our* agent or under any finance or credit plan.

(2) When this policy has been in effect for less than 60 days and is not a renewal with *us*, *we* may cancel for any reason. *We* may cancel by notifying *you* at least 30 days before the date cancellation takes effect.

(3) When this policy has been in effect for 60 days or more, or at any time if it is a renewal with *us*, *we* may cancel:

(a) if there has been a material misrepresentation of fact that, if known to *us*, would have caused *us* not to issue this policy; or

(b) if the risk has changed substantially since this policy was issued.

*We* may cancel this policy by notifying *you* at least 30 days before the date cancellation takes effect.

(4) When this policy is written for a period longer than one year, *we* may cancel for any reason at anniversary. *We* may cancel by notifying *you* at least 30 days before the date cancellation takes effect.

c. When this policy is cancelled, the premium for the period from the date of cancellation to the expiration date will be refunded. The return premium will be pro rata.

d. The return premium may not be refunded with the notice of cancellation or when this policy is returned to *us*. In such cases, *we* will refund it within a reasonable time after the date cancellation takes effect.

e. If *we* cancel this policy, *we* will notify any mortgagee shown in this policy in accordance with Georgia state insurance law.

6. **Nonrenewal.** *We* may elect not to renew this policy. If *we* elect not to renew, a written notice will be delivered to *you*, or mailed to *you* at *your* mailing address shown in the *Declarations*. The notice will be mailed or delivered at least 30 days before the expiration date of this policy. Proof of mailing will be sufficient proof of notice.

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

HW-2111

If *we* elect not to renew this policy, *we* will notify any mortgagee shown in this policy in accordance with Georgia state insurance law.

7. **Assignment of Policy.** Assignment of this policy will be void and *we* will not recognize any such assignment, unless *we* give *our* written consent.

8. **Subrogation and Reimbursement.**

   a. **Subrogation.**

      (1) Applicable to SECTION I:

         If any *insured* to or for whom *we* make payment under this policy has rights to recover damages from another, those rights are transferred to *us* to the extent of *our* payment. That *insured* must do everything necessary to secure *our* rights and must do nothing after loss to impair them. However before a loss, an *insured* may waive in writing all rights of recovery against any person.

      (2) Applicable to SECTION II:

         If any *insured* has rights to recover all or part of any payment *we* have made under this policy, those rights are transferred to *us*. An *insured* must do nothing after loss to impair them. At *our* request, an *insured* will bring suit or transfer those rights to *us* and help *us* enforce them.

         Subrogation does not apply under Section II to **Medical Payments to Others** or **Damage to Property of Others**.

   b. **Reimbursement.**

      If *we* make payment under this policy and any *insured* to or for whom *we* make payment recovers or has recovered from another person or organization, then the *insured* to or for whom *we* make payment must:

      (1) hold in trust for *us* the proceeds of any recovery; and

      (2) reimburse *us* to the extent of *our* payment.

9. **Death.** If *you* die:

   a. *we* insure the legal representative of the deceased. This condition applies only with respect

to the premises and property of the deceased covered under this policy at the time of death;

   b. *insured* includes:

      (1) any member of *your* household who is an *insured* at the time of *your* death, but only while a resident of the *residence premises*; and

      (2) with respect to *your* property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

10. **Conformity to State Law.** When a policy provision is in conflict with the applicable law of the state in which this policy is issued, the law of the state will apply.

11. **Premium.**

    a. Unless as otherwise provided by an alternative payment plan in effect with the **State Farm Companies** with respect to the premium for this policy, the premium is due and payable in full on or before the first day of the policy period shown in the most recently issued **Declarations**.

    b. The renewal premium for this policy will be based upon the rates in effect, the coverages carried, the applicable limits, deductibles, and other elements that affect the premium applicable at the time of renewal.

    c. The premium for this policy may vary based upon:

       (1) the purchase of other products or services from the **State Farm Companies**;

       (2) the purchase of products or services from an organization that has entered into an agreement or contract with the **State Farm Companies**. The **State Farm Companies** do not warrant the merchantability, fitness, or quality of any product or service offered or provided by that organization; or

       (3) an agreement, concerning the insurance provided by this policy, that the **State Farm Companies** has with an organization

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

of which **you** are a member, employee, subscriber, licensee, or franchisee.

d. **Your** purchase of this policy may allow:

(1) **you** to purchase or obtain certain coverages, coverage options, coverage deductibles, coverage limits, or coverage terms on other products from the **State Farm Companies**, subject to their applicable eligibility rules; or

(2) the premium or price for other products or services purchased by **you**, including non-insurance products or services, to vary. Such other products or services must be provided by the **State Farm Companies** or by an organization that has entered into an agreement or contract with the **State Farm Companies**. The **State Farm Companies** do not warrant the merchantability, fitness, or quality of any product or service offered or provided by that organization.

12. **Right to Inspect.**

a. **We** have the right but are not obligated to perform the following:

(1) make inspections and surveys of the **insured location** at any time;

(2) provide **you** with reports on conditions **we** find; or

(3) recommend changes.

Any inspections, surveys, reports, or recommendations relate only to insurability and the premiums to be charged.

b. **We** do not:

(1) make safety inspections;

(2) undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public;

(3) warrant that conditions are safe or healthful; or

(4) warrant that conditions comply with laws, regulations, codes, or standards.

This condition applies to **us** and to any rating, advisory, rate service, or similar organization that makes insurance inspections, surveys, reports, or recommendations on **our** behalf.

13. **Joint and Individual Interests.**  When there are two or more Named Insureds, each acts for all to cancel or change this policy.

14. **Change of Policy Address.  We** may change the Named Insured's policy address as shown in the **Declarations** and in **our** records to the most recent address provided to **us** by:

a. **you**; or

b. the United States Postal Service.

15. **Electronic Delivery.**  With **your** consent, **we** may electronically deliver any document or notice, including a notice to renew, nonrenew, or cancel, instead of mailing it or delivering it by other means.  Proof of transmission will be sufficient proof of notice.

16. **Our Rights Regarding Claim Information.**

a. **We** will collect, receive, obtain, use, and retain all the items described in item b.(1) below and use and retain the information described in item b.(3)(b) below, in accordance with applicable federal and state laws and regulations and consistent with the performance of **our** business functions.

b. Subject to 16.a. above, **we** will not be restricted in or prohibited from:

(1) collecting, receiving, or obtaining records, receipts, invoices, medical bills, medical records, wage information, salary information, employment information, data, and any other information;

(2) using any of the items described in item b.(1) above; or

(3) retaining:

(a) any of the items in item b.(1) above; or

(b) any other information **we** have in **our** possession as a result of **our** processing, handling, or otherwise resolving claims submitted under this policy.

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

c. **We** may disclose any of the items in b.(1) above and any of the information described in item b.(3)(b) above:

(1) to enable performance of **our** business functions;

(2) to meet **our** reporting obligations to insurance regulators;

(3) to meet **our** reporting obligations to insurance data consolidators;

(4) to meet other obligations required by law; and

(5) as otherwise permitted by law.

d. **Our** rights under 16.a., 16.b., and 16.c. above will not be impaired by any:

(1) authorization related to any claim submitted under this policy; or

(2) act or omission of an **insured** or a legal representative acting on an **insured's** behalf.

17. **Duties Regarding Claim Information.** An **insured** or a legal representative acting on an **insured's** behalf must provide **us** with any requested authorizations related to the claim. **Our** rights as set forth under **Our Rights Regarding Claim Information** of this policy will not be impaired by any:

a. authorization related to the claim; or

b. act or omission of an **insured** or a legal representative acting on an **insured's** behalf.

## OPTIONAL POLICY PROVISIONS

Each Optional Policy Provision applies only as shown in the **Declarations** and is subject to all the terms, provisions, exclusions, and conditions of this policy.

**Option AI – Additional Insured.** The definition of **insured** is extended to include the person or organization shown in the **Declarations** as an Additional Insured or whose name is on file with **us**. Coverage is with respect to:

1. **SECTION I – Coverage A**, **Coverage B**, or **Coverage C**; or

2. **SECTION II – Coverage L** and **Coverage M** but only with respect to the **residence premises**. This coverage does not apply to **bodily injury** to an employee arising out of or in the course of the employee's employment by the person or organization.

This option applies only with respect to the location shown in the **Declarations**.

**Option BP – Business Property.** The **COVERAGE B – PERSONAL PROPERTY**, **Special Limits of Liability**, item b., for property used or intended for use in a **business**, including merchandise held as samples or for sale or for delivery after sale, is changed as follows:

The $1,500 limit is replaced with the amount shown in the **Declarations** for this option.

**Option BU – Business Pursuits**. **SECTION II – EXCLUSIONS**, item 1.b. is modified as follows:

1. Section II coverage applies to the **business** pursuits of an **insured** who is a:

a. clerical office employee, salesperson, collector, messenger; or

b. teacher (except college, university, and professional athletic coaches), school principal, or school administrator;

while acting within the scope of the above listed occupations.

2. However, no coverage is provided:

a. for **bodily injury** or **property damage** arising out of a **business** owned or financially controlled by the **insured** or by a partnership of which the **insured** is a partner or member;

b. for **bodily injury** or **property damage** arising out of the rendering of or failure to render professional services of any nature (other than teaching or school administration). This exclusion includes but is not limited to:

(1) computer programming, architectural, engineering, or industrial design services;

(2) medical, surgical, dental, or other services or treatment conducive to the health of persons or animals; and

(3) beauty or barber services or treatment;

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

c. for **bodily injury** to a fellow employee of the **insured** injured in the course of employment; or

d. when the **insured** is a member of the faculty or teaching staff of a school or college:

    (1) for **bodily injury** or **property damage** arising out of the maintenance, use, loading, or unloading of:

        (a) draft or saddle animals, including vehicles for use with them; or

        (b) aircraft, **motor vehicles**, recreational **motor vehicles** or watercraft, airboats, air cushions, or personal watercraft which use a water jet pump powered by an internal combustion engine as the primary source of propulsion;

    owned, operated, or hired by or for the **insured** or employer of the **insured** or used by the **insured** for the purpose of instruction in the use thereof; or

    (2) under **Coverage M** for **bodily injury** to a student arising out of corporal punishment administered by or at the direction of the **insured**.

**Option FA – Firearms.** Firearms are covered for accidental direct physical loss or damage.

The limits for this option are shown in the **Declarations**. The first amount is the limit for any one article; the second amount is the aggregate limit for each loss.

The following additional provisions apply:

1. **We** will not pay for any loss to the property described in this option either consisting of, or directly and immediately caused by, one or more of the following:

    a. mechanical breakdown, wear and tear, or gradual deterioration;

    b. all animals, birds, or insects, including nesting, infestation, gnawing, feeding, breeding, or discharge or release of waste products or secretions by animals, birds, or insects. However, **we** will pay for losses caused by wild bears or deer;

    c. any process of refinishing, renovating, or repairing;

    d. dampness of atmosphere or extremes of temperatures;

    e. inherent defect or faulty manufacture;

    f. rust, fouling, or explosion of firearms;

    g. breakage, marring, scratching, tearing, or denting unless caused by fire, thieves, or accidents to conveyances; or

    h. infidelity of an **insured's** employees or persons to whom the insured property may be entrusted or rented;

2. **Our** limit for loss by any Coverage B peril except theft is the limit shown in the **Declarations** for Coverage B, plus the aggregate limit;

3. **Our** limits for loss by theft are those shown in the **Declarations** for this option. These limits apply in lieu of the Coverage B theft limit; and

4. **Our** limits for loss by any covered peril except those in items 2. and 3. above are those shown in the **Declarations** for this option.

**Option ID – Increased Dwelling Limit. We** will settle losses to damaged **building structures** covered under **COVERAGE A – DWELLING** according to the **Loss Settlement Provision** shown in the **Declarations**.

If the amount **you** actually and necessarily spend to repair or replace damaged **building structures** exceeds the applicable limit of liability shown in the **Declarations**, **we** will pay the additional amounts not to exceed:

1. the Option ID limit of liability shown in the **Declarations** to repair or replace the **dwelling**; or

2. 10% of the Option ID limit of liability to repair or replace **building structures** covered under **COVERAGE A – DWELLING**, Other Structures.

**Report Increased Values. You** must notify **us** within 90 days of the start of construction on any new **building structure** costing $5,000 or more; or any additions to or remodeling of **building structures** that increase their values by $5,000 or more. **You** must pay any additional premium due for the increased value. **We** will not pay more than the applicable limit of liability shown in the **Declarations** if **you** fail to notify **us** of the increased value within 90 days.

© , Copyright, State Farm Mutual Automobile Insurance Company, 2017

**Option IO – Incidental Business.** The coverage provided by this option applies only to that incidental *business* occupancy on file with *us*.

1. **COVERAGE A – DWELLING**, **Other Structures**, item 2.b. is deleted.

2. **COVERAGE B – PERSONAL PROPERTY** is extended to include equipment, supplies, and furnishings usual and incidental to this *business* occupancy. This Optional Policy Provision does not include electronic data processing system equipment or the recording or storage media used with that equipment or merchandise held as samples or for sale or for delivery after sale.

   The Option IO limits are shown in the *Declarations*. The first limit applies to property on the *residence premises*. The second limit applies to property while off the *residence premises*. These limits are in addition to the **COVERAGE B – PERSONAL PROPERTY**, **Special Limits of Liability** on property used or intended for use in a *business*.

3. Under Section II, the *residence premises* is not considered *business* property because an *insured* occupies a part of it as an incidental *business*.

4. **SECTION II – EXCLUSIONS**, item 1.b. is replaced with the following:

   b. *bodily injury* or *property damage* arising out of *business* pursuits of any *insured*, except as provided in item c. below. This exclusion does not apply to activities that are ordinarily incident to non-*business* pursuits or to *business* pursuits of an *insured* that are necessary or incidental to the use of the *residence premises* as an incidental *business*;

5. This insurance does not apply to:

   a. *bodily injury* to an employee of an *insured* arising out of the *residence premises* as an incidental *business* other than to a *residence employee* while engaged in the employee's employment by an *insured*;

   b. *bodily injury* to a student arising out of corporal punishment administered by or at the direction of the *insured*;

c. liability arising out of any acts, errors, or omissions of an *insured*, or any other person for whose acts an *insured* is liable, resulting from the preparation or approval of data, plans, designs, opinions, reports, programs, specifications, supervisory inspections, or engineering services in the conduct of an *insured's* incidental *business* involving data processing, computer consulting, or computer programming; or

d. any claim made or suit brought against any *insured* by:

   (1) any person in the care of any *insured* because of child care services provided by or at the direction of:

      (a) any *insured*;

      (b) any employee of any *insured*; or

      (c) any other person actually or apparently acting on behalf of any *insured*; or

   (2) any person who makes a claim because of *bodily injury* to any person in the care of any *insured* because of child care services provided by or at the direction of:

      (a) any *insured*;

      (b) any employee of any *insured*; or

      (c) any other person actually or apparently acting on behalf of any *insured*.

   Coverage M does not apply to any person indicated in d.(1) and d.(2) above.

   This exclusion does not apply to the occasional child care services provided by any *insured*, or to the part-time child care services provided by any *insured* under 19 years of age.

**Option JF – Jewelry and Furs.** Jewelry, watches, fur garments and garments trimmed with fur, precious and semi-precious stones, gold other than goldware, silver other than silverware, and platinum are covered for accidental direct physical loss or damage.

The limits for this option are shown in the *Declarations*. The first amount is the limit for any one article; the second amount is the aggregate limit for each loss. All provisions and exclusions of **SECTION I – LOSSES**

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

**INSURED**, **COVERAGE B – PERSONAL PROPERTY**, **Theft** apply to Option JF.

The following additional provisions apply:

1.  ***We*** will not pay for any loss to the property described in this option either consisting of, or directly and immediately caused by, one or more of the following:

    a.  mechanical breakdown, wear and tear, or gradual deterioration;

    b.  all animals, birds or insects, including nesting, infestation, gnawing, feeding, breeding, or discharge or release of waste products or secretions by animals, birds, or insects.  However, ***we*** will pay for losses caused by wild bears or deer;

    c.  inherent vice; or

    d.  seizure or destruction under quarantine or customs regulations;

2.  ***Our*** limit for loss by any Coverage B peril except theft is the limit shown in the ***Declarations*** for Coverage B, plus the aggregate limit;

3.  ***Our*** limits for loss by theft are those shown in the ***Declarations*** for this option. These limits apply in lieu of the Coverage B theft limit; and

4.  ***Our*** limits for loss by any covered peril except those in items 2. and 3. above are those shown in the ***Declarations*** for this option.

**Option OL – Building Ordinance or Law.**

1.  **Coverage Provided.**  The total limit of insurance provided by this option will not exceed an amount equal to the Option OL percentage shown in the ***Declarations*** of the Coverage A limit shown in the ***Declarations*** at the time of the loss, as adjusted by the Inflation Coverage provisions of this policy.  This is an additional amount of insurance and applies to ***building structures*** on the ***residence premises***.

2.  **Damaged Portions of *Building Structure*.**  When a ***building structure*** covered under **COVERAGE A – DWELLING** is damaged by a ***loss insured***, ***we*** will pay for the increased cost to repair or rebuild the physically damaged portion of the ***building structure*** caused by the enforcement of a building, zoning, or land use ordinance or law if the enforcement is directly caused by the same ***loss insured*** and the

requirement is in effect at the time the ***loss insured*** occurs.

3.  **Undamaged Portions of Damaged *Building Structure*.**  When a ***building structure*** covered under **COVERAGE A – DWELLING** is damaged by a ***loss insured***, ***we*** will also pay for:

    a.  the cost to demolish and clear the site of the undamaged portions of the ***building structure*** caused by the enforcement of a building, zoning, or land use ordinance or law if the enforcement is directly caused by the same ***loss insured*** and the requirement is in effect at the time the ***loss insured*** occurs; and

    b.  loss to the undamaged portion of the ***building structure*** caused by enforcement of any ordinance or law if:

        (1) the enforcement is directly caused by the same ***loss insured***;

        (2) the enforcement requires the demolition of portions of the same ***building structure*** not damaged by the same ***loss insured***;

        (3) the ordinance or law regulates the construction or repair of the ***building structure***, or establishes zoning or land use requirements at the described premises; and

        (4) the ordinance or law is in force at the time of the occurrence of the same ***loss insured***; or

    c.  legally required changes to the undamaged portion of the ***building structure*** caused by the enforcement of a building, zoning, or land use ordinance or law, if:

        (1) the enforcement is directly caused by the same ***loss insured***;

        (2) the requirement is in effect at the time the ***loss insured*** occurs; and

        (3) the legally required changes are made to the undamaged portions of specific ***building structure*** features, systems, or components that have been physically damaged by the ***loss insured***.

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

HW-2111

*We* will not pay for legally required changes to specific *building structure* features, systems, or components that have not been physically damaged by the *loss insured*.

4. **Building Ordinance or Law Coverage Limitations.**

   a. *We* will not pay for any increased cost of construction:

      (1) until the *building structure* is actually repaired or replaced at the same or another premises in the same general vicinity;

      (2) unless the repairs or replacement are made as soon as reasonably possible after the loss, not to exceed two years; and

      (3) due to any original or subsequent construction, addition, modification, renovation, remodel, or repair to a *building structure* that did not comply with a building, zoning, or land use ordinance or law in effect when the construction, addition, modification, renovation, remodel, or repair was performed.

   b. *We* will not pay more under this coverage than the amount *you* actually spend:

      (1) for the increased cost to repair or rebuild the *building structure* at the same or another premises in the same general vicinity if relocation is required by ordinance or law; and

      (2) to demolish and clear the site of the undamaged portions of the *building structure* caused by enforcement of building, zoning, or land use ordinance or law.

   *We* will not pay for more than a *building structure* of the same height, floor area, and style on the same or similar premises as the *building structure*, subject to the limit provided in paragraph 1. **Coverage Provided** of this option.

**Option SG – Silverware and Goldware Theft.** The **COVERAGE B – PERSONAL PROPERTY**, **Special Limits of Liability**, item i., for theft of silverware and goldware is increased to be the amount shown in the *Declarations* for this option.

© Copyright, State Farm Mutual Automobile Insurance Company, 2017

**EXHIBIT "B"**

# YOUR INSURANCE
# ATTORNEY™

**Brian P. Braddy, Esq.**
BPB@YourInsuranceAttorney.com

February 14, 2025

**Via U.S. and Electronic mail**
State Farm Fire and Casualty Company

| | | |
|---|---|---|
| Re: | **Insured:** | **Marie M. Etienne Severe** |
| | **Claim No.:** | **11-73H4-40C** |
| | **Policy No.:** | **11-KF-L323-2** |
| | **Date of loss:** | **August 30, 2024** |
| | **Property Location:** | **500 Arbor Lane** |
| | | **Centerville, GA 31028** |

Dear Sir or Madame:

In accordance with O.C.G.A. Sec 33-4-6, this correspondence serves as the mandatory sixty (60) day pre-suit notice required by statute with respect to the bad faith claim asserted by my client(s), Marie M. Etienne Severe.

Upon thorough review of the circumstances surrounding this claim and despite my client's full compliance with all conditions contained in the insurance policy, it has become evident that State Farm Fire and Casualty Company's conduct in handling the claim has been unduly litigious and has caused unnecessary trouble and expense. State Farm Fire and Casualty Company's refusal to properly indemnify my client(s) for the covered loss was done frivolously, without a reasonable basis, and otherwise, in bad faith.

The violations under the Georgia Insurance Code may include but are not limited to:

(1) Knowingly misrepresenting to claimants and insureds relevant facts or policy provisions relating to coverages at issue. See O.C.G.A. § 33-6-34(1);

(2) Failing to acknowledge with reasonable promptness pertinent communications with respect to claims arising under its policies. See O.C.G.A. § 33-6-34(2);

(3) Failing to adopt and implement procedures for the prompt investigation and settlement of claims arising under its policies. See O.C.G.A. § 33-6-34(3);

(4) Not attempting in good faith to effectuate prompt, fair, and equitable settlement of claims submitted in which liability has become reasonably clear. See O.C.G.A. § 33-6-34(4);

(5) Refusing to pay claims without conducting a reasonable investigation. See O.C.G.A. §

33- 6-34(6);

(6) When requested by the insured in writing, failing to affirm or deny coverage of claims within a reasonable time after having completed its investigation related to such claim or claims. See O.C.G.A. § 33-6-34(7); and

(7) When requested by the insured in writing, failing in the case of claim denial or offers of compromise settlement to provide promptly a reasonable and accurate explanation of the basis for such action. In the case of claims denials, such denials shall be in writing. See O.C.G.A. § 33-6-34(10);

(8) Issuing checks or drafts in partial settlement of a loss or claim under a specific coverage which contain language which releases the insurer or its insured from its total liability. See O.C.G.A. § 33-6-34(14).

Bad faith claims handling violation of O.C.G.A. § 33-6-34 triggers additional liability on your part under O.C.G.A. § 33-4-6 that includes the amount of the claim, plus a penalty of an additional fifty percent (50%) of the value of the claim and reasonable attorneys' fees and costs.

Please allow this correspondence to serve as a formal demand for payment, as outlined in the enclosed estimate of damages totaling $118,695.11. This demand is being made pursuant to O.C.G.A. § 33-4-6, and you have sixty (60) days in which to make payment on this claim or be subject to a lawsuit containing a claim for breach of contract and bad faith seeking all compensation allowed by law, including attorneys' fees and penalty of fifty percent (50%) of the loss amount.

This letter constitutes a "proper demand" for payment under O.C.G.A. § 33-4-6. If you contend that a proper demand has not been made, you must immediately notify us of the reasons for such an allegation. Otherwise, it will be assumed that you agree that a proper demand was made.

If you fail to respond to this letter with an offer of settlement that is acceptable to my client, we will have no alternative but to recommend that a lawsuit be filed against you.

In order to avoid a suit for bad faith penalties and attorney's fees, payment must be received in my office within sixty (60) days of your receipt of this letter.

Sincerely yours,

# YOUR INSURANCE
# A T T O R N E Y ™

**Brian P. Braddy, Esq.**

**EFILED IN OFFICE**
CLERK OF SUPERIOR COURT
HOUSTON COUNTY, GEORGIA

**2025V132864L**

**AUG 26, 2025 07:44 AM**

*Terri L Childers*
Terri Childers, Clerk of Superior Court
Houston County, Georgia

## IN THE SUPERIOR COURT OF HOUSTON COUNTY
## STATE OF GEORGIA

| | |
|---|---|
| MARIE M ETIENNE SEVERE, | |
| **Plaintiff,** | |
| **vs.** | |
| STATE FARM FIRE AND CASUALTY COMPANY**,** | **CIVIL ACTION FILE NO:** |
| **a foreign corporation,** | |
| **Defendant.** | |

### PLAINTIFF'S FIRST SET OF INTERROGATORIES

Plaintiff, MARIE M ETIENNE SEVERE (the "Insured"), pursuant to O.C.G.A. § 9-11-33, propounds the following First Set of Interrogatories upon Defendant, STATE FARM FIRE AND CASUALTY COMPANY (the "Defendants"), to be answered in writing, under oath, within the time specified.

### <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this date I electronically filed the foregoing with the Clerk of Court using the Court's CM/ECF system, which will automatically send e-mail notification of such filing to all attorneys of record on this 26th day of August 2025.

**Respectfully Submitted by,**

**Your Insurance Attorney, PLLC.**

*/s/ Shandria Brown*
Shandria Brown, Esq.
Georgia Bar No. 756215
3384 Peachtree Rd NE, Suite 250
Atlanta, GA 30326
P: 888-570-5677
D: 678-830-2182
F: 888-881-1075
Email: yiaga5@yourinsuranceattorney.com
*Attorney for Plaintiff*

## DEFINITIONS AND INSTRUCTIONS

1.      Insert your answers in the space provided following each question.  If additional space is needed, so indicate in the space provided, prepare your answers on a separate paper, and attach the additional paper to your answers.

2.      Separately answer each interrogatory, and each subsection of each interrogatory. The term "you" and "your" means the party or parties to which this request is addressed, including its divisions, departments, subsidiaries, affiliates, predecessors, present or former officers, directors, owners, agents, accountants, attorneys, and all other persons acting or purporting to act on its behalf, as well as each partnership in which it is a partner.

3.      The terms "Insurance Company" or "Defendant" means the defendant in this action to which these Interrogatories are addressed, including its agents, attorneys, accountants, and all other persons acting or purporting to act on their behalf.  The terms "Insurance Company" or "Defendant" also includes the party's divisions, departments, subsidiaries, affiliates, predecessors, present or former officers, directors, owners, agents, attorneys, and accountants as well as each partnership in which it is a partner, and includes any other person, acting or purporting to act on its behalf.

4.      The terms "you" and "your" mean the party or parties to which these interrogatories are addressed, including its agents, attorneys, accountants, and all other persons acting or purporting to act on its behalf.

5.      The "Complaint" means the Complaint filed by the Insured in this action.

6.      The term "Claim" means any statement, concept, assertion, idea, allegation, fact, law, rule, theory, observation, cause of action, or principle whatsoever, based upon which Plaintiff

demands that she has suffered damages, or has a right to payment, as the result of any act or omission of Defendant.

7.      The terms "person" or "persons" mean any natural person, individual, proprietorship, partnership, corporation, association, organization, joint venture, firm, other business enterprise, governmental body, and group of natural persons or other entity, and includes any other person acting on behalf of a person.

8.      The term "contract" means any promise, or set or promises, which creates an obligation to do or not do a particular thing where there was meeting of the minds on a given proposition and an understanding and intention between the parties.

9.      The term "communication" means any information given, whether oral or written; any oral or written statement, conference, consultation, dialogue, colloquy, discussion, conversation, agreement, the sharing of knowledge by one with another, bargaining preparatory to making a contract or any expression of any kind.

10.     The term "document" means and includes any kind of written, typed, recorded or graphic matter, however produced or reproduced, of any kind or description, whether sent or received, and every record of every type, including originals, non-identical copies and drafts, and both sides of any documentation where information appears on both sides, and including but not limited to: letters, correspondence, memoranda, meeting transcripts or minutes, public filings or tax returns, papers, books, telegrams, bulletins, notices, announcements, instructions, charts, manuals, brochures, schedules, cables, telex messages, notes, notations, accountants' working papers, transcriptions, agendas, reports, recordings of telephone or other conversations, of interviews, of conferences or of meetings, telephone messages, diaries, indices, books, reports, ledgers, working papers, invoices, worksheets, receipts, computer printouts, financial statements,

schedules affidavits, contracts, canceled checks, statements, transcripts, magazine or newspaper articles, periodicals, releases and any and all drafts, alterations and modifications, changes and amendments of any of the foregoing, whether handwritten, printed or electronically prepared, filed or stored, affidavits, statements, summaries, opinions, reports, studies, analyses, evaluations, contracts, agreements, journals, statistical records, calendars, appointment books, diaries, lists, tabulations, sound recordings, computer print-outs, data processing input and output, microfilms, newspapers, magazines, books, periodicals or press releases, including information stored on any electromagnetic storage device, any written, printed, typed, recorded, or graphic matter, however produced or reproduced or stored to which you have or had access. "Document" shall also be deemed to include any summary of a document or documents called for hereafter.

11.    The term "all documents" means every document or group of documents as above defined that are known to you or that can be located or discovered by reasonably diligent efforts.

12.    As used herein the singular shall include the plural, the plural shall include the singular, and the masculine, feminine, and neuter shall include each of the other genders.

13.    The terms "and" as well as "or" shall be construed disjunctively as well as conjunctively as necessary to make the interrogatory inclusive rather than exclusive. The term "all" means "any and all." The term "each" means "each and every," and the term "every" means "each and every."

14.    The terms "refer" or "relate to" mean setting forth, pertaining to, memorializing, constituting, embodying, discussing, analyzing, reflecting or otherwise concerning.

15.    The term "locate" or "location" means to state the present whereabouts of each Document and to identify the persons having possession, custody or control thereof.

16.    The term "to date" shall mean the date on which you answer these interrogatories.

17.    The term "including" means "including but not limited to".

18.    "Relating to" or "relevant to" means embodying, pertaining to, concerning, involving, constituting, comprising, reflecting, discussing, evidencing, referring to, consisting of, or having any logical or factual connection whatever with the subject matter in question.

19.    The term "Identify," when used with reference to a natural person, means state:

(a)    his full name and address (or, if the present address is not known, his last known address).

(b)    the full name and address of each of his employers, each corporation of which he is an officer or director and each business in which he is a principal.

(c)    his present (or, if the present is not known, his last known) position and his position or positions at the time of the act to which the interrogatory answer relate, and

(d)    such other information sufficient to enable Plaintiff to identify the person.

20.    "Identify," when used with reference to any entity other than a natural person, means:

(a)    state the full name of the entity, the type of entity (e.g., corporation, partnership, etc.), the address of its principal place of business, its principal business activity, and if it is a corporation, the jurisdiction under the laws of which it has been organized and the date of such organization.

21.    "Identify," when used with reference to a document or written communication, means state:

(a)    its nature (e.g., letter, telegram, floppy disc, computer printout, memorandum, chart, report or study), date, author, date and place of preparation and the name and address of each addressee, if there is an addressee;

(b)    the identity of each signer to the document or communication;

(c)    the title or heading of the document or communication;

(d)    its substance;

(e)     its present (or, if the present is not known, the last known) location and custodian.

(f)     the identity of each person to whom a copy was sent and each date of its receipt and each date of its transmittal or other disposition by (I) respondent and (ii) any other person (naming such other person) who, at any time, either received, transmitted or otherwise disposed of such document or communication and each copy thereof;

(g)     the circumstances of each such receipt and each transmittal or other disposition, including identification of the person from whom received and the person to whom transmitted.

22.     "Identify," when used with reference to an oral transaction or oral communication, means state:

(a)     its nature (e.g., telephone call, conversation in person, etc.)

(b)     the date and place thereof.

(c)     the identity and address of each person participating therein, present during or witness to any part thereof.

(d)     identify each document in which such transaction or communication was recorded, described or referred to.

23.     "Identify" when used with reference to a lawsuit means state:

(a)     the caption of each lawsuit;

(b)     the court in which the lawsuit was filed;

(c)     the case number;

(d)     identify the parties, and

(e)     a brief summary of the nature of the claim or charge.

24.     "Identify" when used with reference to an administrative claim or charge means state:

(a)     identify the claimant or charging party;

(b)     the administrative office were filed;

(c)    the number assigned to identify the claim or charge, and

(d)    a brief summary of the nature of the claim or charge.

25.    "Identify," when used in any other context that is herein above set forth, means to describe the act, word, situation, event, etc. (and/or conduct, course of action of any nature whatsoever, including without limitation any failure to act, to engage in any conduct or to pursue any course of action), to be identified as fully as possible and identify each document or communication or act in which such act, word, situation, event, conduct or course of action, etc., was recorded, refers or relates to each answer, forms all or part of the basis for an answer; and/or corroborates and answer.

26.    You may, in lieu of identifying any Document or written communication, attach a true copy of each Document as an exhibit to the answers to these interrogatories.  On each occasion in which you choose to attach a Document as your answer to an interrogatory, identify the portion of the Document that answers the interrogatory.

27.    Identify each Document produced pursuant to an interrogatory by the paragraph number of the interrogatory in response to which it is produced and by the file from which the document was produced.

28.    If any of the information furnished in an answer to all or part of an interrogatory is not within your personal knowledge, identify each person who has personal knowledge of the information furnished in such answer and each person who communicated to you any part of the information furnished.

29.    If the answer to all or any part of the interrogatory is not presently known or available to you, include a statement to that effect, furnish the information now known or otherwise available to you, and respond to the entire interrogatory by supplemental answer, in writing, under

oath, within ten days from the time the entire answer becomes known or available to you, but. in no event less than five days prior to trial.

30.    If you contend that it would be unreasonably burdensome to obtain and provide all of the information called for in response to any one of these interrogatories or any subpart thereof, then in response to the appropriate interrogatory or subpart:

(a)    set forth all such information that is available to you without undertaking what you contend to be an unreasonable burden;

(b)    state with particularity the grounds on which you contend that additional efforts to obtain such information would be unreasonably burdensome; and

(c)    describe with particularity the efforts made by you to secure such information, including, without limitation, the identity of all persons consulted, and files, records, and documents reviewed, and the identity of each person who participated in gathering such information, including the duration of time spent and nature of work done by each person.

31.    Unless your response to an interrogatory is complete when made, these interrogatories are continuing insofar as you are required to promptly make further or supplemental answers if new information is discovered and/or acquired by you between the date of your initial answer and any time thereafter.

32.    If you claim in response to any request for production that any requested document is "privileged" and not subject to discovery, you shall so state expressly and, in addition, shall provide a privilege log, describing the nature of the documents, communications or things not produced or disclosed in a manner that, without revealing the information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection.

33.    If all of the information furnished in answer to all or part of an interrogatory is not within the personal knowledge of the affiant, identify each person to whom all or part of the

information furnished is a matter of personal knowledge and each person who communicated to the affiant any part of the information furnished.

34.     To the extent precise and complete information cannot be furnished, such information as is available shall be supplied, together with an estimate of the precise and complete information.  Where such an estimate is given, the method employed in making the estimate shall be described.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this date I electronically filed the foregoing with the Clerk of Court using the Court's CM/ECF system, which will automatically send e-mail notification of such filing to all attorneys of record on this 26th day of August 2025.

**Respectfully Submitted by,**

**Your Insurance Attorney, PLLC.**

*/s/ Shandria Brown*
Shandria Brown, Esq.
Georgia Bar No. 756215
3384 Peachtree Rd NE, Suite 250
Atlanta, GA 30326
P: 888-570-5677
D: 678-830-2182
F: 888-881-1075
Email: yiaga5@yourinsuranceattorney.com
*Attorney for Plaintiff*

⊕ EFILED IN OFFICE
CLERK OF SUPERIOR COURT
HOUSTON COUNTY, GEORGIA

**2025V132864L**

**AUG 26, 2025 07:44 AM**

*Terri L Childers*
Terri Childers, Clerk of Superior Court
Houston County, Georgia

### IN THE SUPERIOR COURT OF HOUSTON COUNTY
### STATE OF GEORGIA

MARIE M ETIENNE SEVERE,

**Plaintiff,**

**vs.**

STATE FARM FIRE AND CASUALTY COMPANY**,**

**a foreign corporation,**

**Defendant.**

**CIVIL ACTION FILE NO:**

---

### PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS

---

Plaintiff, MARIE M ETIENNE SEVERE, (the "Insured"), pursuant to O.C.G.A. § 9-11-34, hereby requests that Defendant, STATE FARM FIRE AND CASUALTY COMPANY (the "Defendants"), make available for inspection and duplication, in response to each numbered paragraph, all documents specified herein which are in its possession, custody or control or in the possession, custody or control of its agents, accountants or attorneys. Defendant is requested to make such production within the time period prescribed either by the Georgia Rules of Civil Procedure or by order of the Court, at the offices of **Your Insurance Attorney, PLLC., 3384 Peachtree Rd NE, Atlanta, GA 30326**

### I.     DEFINITIONS AND INSTRUCTIONS

1.     The terms "you", "your(s)", "yourselves", "defendant", and/or "Insurance Company" means the party or parties to which this request is addressed, and any agents, representatives, attorneys or other persons acting or purporting to act, on its behalf.

2.      The term "person" means any natural person, individual, proprietorship, partnership, corporation, association, organization, joint venture, firm, other business enterprise, governmental body, group of natural persons, or other entity.

3.      The "Complaint" means the Complaint filed by the Insured in this action.

4.      The term "document" shall mean any written or graphic matter and other means of preserving thought or expression and all tangible things from which information can be processed or transcribed, including the originals and all non-identical copies, whether different from the original by reason of any notation made on such copy or otherwise, including, but not limited to, correspondence, memoranda, notes, messages, letters, telegrams, teletype, telefax, bulletins, meetings or other communications, inter-office and intra-office telephone calls, diaries, chronological data, minutes, books, reports, studies, summaries, pamphlets, bulletins, printed matter, charts, ledgers, invoices, work-sheets, receipts, returns, computer printouts, prospectuses, financial statements, schedules, affidavits, contracts, canceled checks, statements, transcripts, statistics, surveys, magazine or newspaper articles, releases (and any and all drafts, alterations or modifications, changes and amendments of any of the foregoing), graphic or aural records or representations of any kind (including without limitation, photographs, microfiche, microfilm, videotape, records and motion pictures) and electronic, mechanical or electric records or representations of any kind (including without limitation, tapes, cassettes, discs and records).

5.      The term "all documents" means every document or group of documents as above defined that are known to you or that can be located or discovered by reasonably diligent efforts.

6.      The term "Insurance Company" shall refer to the Defendant in this action, its affiliates, subsidiaries, predecessors, successors, agents, attorneys and/or anyone else acting in its behalf.

7.      The term "communication(s)" means every manner or means of disclosure, transfer or exchange of information, whether in person, by telephone, mail, personal delivery or otherwise.

8.      As used herein, the singular shall include the plural, the plural shall include the singular, and the masculine, feminine and neuter shall include each of the other genders.

9.      The terms "and", "as well as" and "or" shall be construed disjunctively as well as conjunctively as necessary to make the interrogatory inclusive rather than exclusive.  The term "all" means "any and all."  The terms "each" and "every" means "each and every," the term "including" means "including without limitation."

10.     The terms "referring to" or "relating to" mean setting forth, pertaining to, memorializing, constituting, embodying, discussing, analyzing, reflecting or otherwise concerning.

11.     The terms "locate" or "location" means to state the present whereabouts of each document and to identify the person(s) having possession, custody or control thereof.

12.     The term "to date" shall mean the date on which you respond to this request.

13.     When producing the required documents, please keep all documents segregated by the file in which the documents are contained and indicate the name of the file in which the documents are contained and the name of the documents being produced.

14.     When producing the required documents, please produce all other documents that are clipped, stapled or otherwise attached to any requested document.

15.     In the event such file(s) or document(s) has (have) been removed, either for the purpose of this action or for some other purpose, please state the name and address of the person who removed the file, the title of the file and each sub-file, if any, maintained within the file, and the present location of the file.

16.    The words "and" and "or" shall be construed either conjunctively or disjunctively to bring within the scope of these requests any documents which might otherwise be construed to be outside their scope.

17.    If you claim that the attorney/client or any other privilege or the attorney's work product doctrine applies to any document, the production of which is called for by these requests, then for each such document, state its date, subject matter, author(s), recipient(s), present custodian and all past custodians, and such additional information concerning the claim of privilege or work product doctrine as will permit the adjudication of the propriety of the claim.

18.    If you contend that it would be unreasonably burdensome to obtain and provide all of the documents called for in response to any one of these requests, then in response to the appropriate request:

(a)    furnish each such document that is available to you without undertaking what you contend to be an unreasonable burden;

(b)    state with particularity the grounds on which you contend that additional efforts to obtain such documents would be unreasonably burdensome; and

(c)    describe with particularity the efforts made by you to secure such documents, including, without limitation, the identity of all persons consulted, and files, records, and documents reviewed, and the identity of each person who participated in gathering such documents, including the duration of time spent and nature of work done by each person.

19.    Unless otherwise indicated, all requests include the time period from the date of the Loss to the date you receive this request.

20.    The term "Insured" shall refer to the Plaintiff(s), affiliates, predecessors, successors, agents, attorneys and/or anyone else acting in their behalf.

## II.    <u>LOST/DESTROYED DOCUMENTS</u>

If any document to be produced was, but is no longer, in your possession, custody or control and/or has been destroyed or is otherwise incapable of production or state: (a) the date, place and means of the destruction; (b) the name and address of each person deciding upon, participating in and having knowledge of the destruction; (c) the reason for the destruction; (d) if not destroyed, the reason why the document is incapable of production; and (e) the subject matter of the document.

## III.    <u>DOCUMENTS REQUESTED</u>

1.    A true and correct certified copy of the insurance policy provided by the Insurance Company to the Insured, for which this lawsuit is premised, including but not limited to, declaration sheet(s), all addendums and attachments.

2.    Each and every timesheet, log and all other documents reflecting time spent by the Insurance Company at the Property.

3.    Each and every document, evidencing the name, address, and the position/relationship with the Insurance Company, of every individual who has visited or plans to visit the Property on behalf of the Insurance Company.

4.    Any and all correspondence or written communications from the Insurance Company to the Insured, which in any manner pertain to the Insured's loss as described in the Complaint.

5.    Any and all correspondence or written communications from the Insured to the Insurance Company which in any manner pertains to the Insured's loss as described in the Complaint.

6.    Any and all photographs taken by the Insurance Company of the Property.

7.    All documents containing information regarding a statement by the Insured at any time during the Insurance Company's handling of the Insured's loss, including adjuster notes,

claim reports, interoffice memorandum, tape recordings, Examination Under Oath transcripts, and any other transcripts or written statements from the Insured.

8.    Any and all bills or estimates for repairs to the Property submitted to the Insurance Company by the Insured.

9.    Any and all checks paid to, or on behalf of the Insured, representing insurance coverage payment(s) for the loss.

10.    All reports which in any manner pertain to the Insured's loss.

11.    All Proof of Loss forms pertaining to the subject loss that were sent or received by you or your representatives to or from the Insured or the Insured's representative.

12.    Transcripts of all recorded statements taken by you or your representatives in connection with the subject loss.

13.    All inspection reports or other documents that evidence the cause of the damages at issue in the subject claim as determined by you or your representative.

14.    All applications for insurance submitted by or on behalf of the Insured to you or your representatives in connection with obtaining or renewing the subject Policy.

15.    All photographs or videos taken by you or your representative(s) in connection with the initial issuance or renewal of the subject Policy.

16.    A current curriculum vitae (CV) or resume for each person retained on your behalf for the purpose of rendering an opinion as to the cause or extent of the subject damage.

17.    All affidavits or sworn statements in your possession pertaining to the subject loss.

18.    Transcripts of all examinations under oath (EUO) taken by you or your representatives in connection with the subject loss.

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this date I electronically filed the foregoing with the Clerk of Court using the Court's CM/ECF system, which will automatically send e-mail notification of such filing to all attorneys of record on this 26th day of August 2025.

**Respectfully Submitted by,**

**Your Insurance Attorney, PLLC.**

<u>*/s/ Shandria Brown*</u>
Shandria Brown, Esq.
Georgia Bar No. 756215
3384 Peachtree Rd NE, Suite 250
Atlanta, GA 30326
P: 888-570-5677
D: 678-830-2182
F: 888-881-1075
Email: yiaga5@yourinsuranceattorney.com
*Attorney for Plaintiff*

⚖ EFILED IN OFFICE
CLERK OF SUPERIOR COURT
HOUSTON COUNTY, GEORGIA

**2025V132864L**

**AUG 26, 2025 07:44 AM**

*Terri L Childers*
Terri Childers, Clerk of Superior Court
Houston County, Georgia

**IN THE SUPERIOR COURT OF HOUSTON COUNTY
STATE OF GEORGIA**

| | |
|---|---|
| MARIE M ETIENNE SEVERE, | |
| **Plaintiff,** | |
| **vs.** | |
| STATE FARM FIRE AND CASUALTY COMPANY, | **CIVIL ACTION FILE NO:** |
| **a foreign corporation,** | |
| **Defendant.** | |

## RULE 5.2 CERTIFICATE OF SERVICE OF DISCOVERY

Pursuant to Rule 5.2 of the Uniform Superior/State Court Rules, this is to certify that I served a true and correct copy of the following: ***PLAINTIFF'S FIRST INTERROGATORIES TO DEFENDANT and PLAINTIFF'S FIRST REQUEST FOR PRODUCTION TO DEFENDANT***, upon all parties to this matter via Statutory Electronic Service Pursuant to O.C.G.A. § 9-11-5.

This 26th day of August 2025.

**Respectfully Submitted by,**

**Your Insurance Attorney, PLLC.**

*/s/ Shandria Brown*
Shandria Brown, Esq.
Georgia Bar No. 756215
3384 Peachtree Rd NE, Suite 250
Atlanta, GA 30326
P: 888-570-5677
D: 678-830-2182
F: 888-881-1075
Email: yiaga5@yourinsuranceattorney.com
*Attorney for Plaintiff*

## **CERTIFICATE OF SERVICE**

I hereby certify that I have this day filed this **RULE 5.2 CERTIFICATE OF SERVICE OF DISCOVERY** upon all parties to this matter by e-filing same using the Court's CM/ECF System which will automatically send email notification of said filing to counsel of record.

This 26th day of August 2025.

**Respectfully Submitted by,**

**Your Insurance Attorney, PLLC.**

*/s/ Shandria Brown*
Shandria Brown, Esq.
Georgia Bar No. 756215
3384 Peachtree Rd NE, Suite 250
Atlanta, GA 30326
P: 888-570-5677
D: 678-830-2182
F: 888-881-1075
Email: yiaga5@yourinsuranceattorney.com
*Attorney for Plaintiff*

## IN THE SUPERIOR COURT OF HOUSTON COUNTY

### STATE OF GEORGIA

⚡ EFILED IN OFFICE
CLERK OF SUPERIOR COURT
HOUSTON COUNTY, GEORGIA

**2025V132864L**

AUG 28, 2025 02:16 PM

*Terri L Childers*
Terri Childers, Clerk of Superior Court
Houston County, Georgia

MARIE M ETIENNE SEVERE,

**Plaintiff,**

v.

STATE FARM FIRE AND CASUALTY

COMPANY,

**a foreign corporation,**

**Defendant.**

CIVIL ACTION FILE NO.:

2025V132864L

---

### AFFIDAVIT IN SUPPORT OF MOTION TO APPOINT SPECIAL PROCESS SERVER

Personally appeared, Alexandra Dalman, who being duly sworn, says:

1. I am a resident of the State of Georgia and am a citizen of the United States of America.

2. I am over the age of twenty-one (21) years.

3. I am in no way a party to the above action, nor a relative of a party.

4. I am not the attorney of any of the parties.

5. I have no financial interest in the related litigation.

6. I am a wholly disinterested party in the pending litigation.

7. I am licensed by the State of Georgia as a Private Detective, appointed as a process server in other courts of Georgia, and competent under the Civil Practice Act of Georgia as an agent to perfect service.

8. I have never been convicted of a felony.

Alexandra Dalman

Sworn to and Subscribed before me this

28th day of August , 2025.

Notary Public

My Commission Expires: 10-23-27

⚡ EFILED IN OFFICE
CLERK OF SUPERIOR COURT
HOUSTON COUNTY, GEORGIA

**2025V132864L**

**AUG 28, 2025 02:16 PM**

*Terri L Childers*
Terri Childers, Clerk of Superior Court
Houston County, Georgia

## IN THE SUPERIOR COURT OF HOUSTON COUNTY

## STATE OF GEORGIA

MARIE M ETIENNE SEVERE,

    **Plaintiff,**

v.

STATE FARM FIRE AND CASUALTY

COMPANY,

**a foreign corporation,**

    **Defendant.**

CIVIL ACTION FILE NO.:

2025V132864L

## PLAINTIFF'S MOTION FOR APPOINTMENT
## OF SPECIAL PROCESS SERVER

COME NOW Plaintiff MARIE M ETIENNE SEVERE, and hereby move the court for appointment of a special process server to serve the above listed defendant, whose registered agent is located in Georgia, personally with a copy of the summons and complaint. In support of their motion, Plaintiffs show the court the following:

1.

In accordance with O.C.G.A. § 9-11-4(c), process shall be served by the marshal of the county where the action is brought or where the defendant, a resident of Georgia, is found, or by any citizen of the United States specially appointed by the court for that purpose.

2.

Plaintiffs request and move this court to appoint Alexandra Denise Dalman as special process server who will attempt to serve the summons and complaint in this case.

3.

In the present case, the sheriff may be unable to serve the defendant before the expiration

of the statute of limitations or may be unable to serve the defendant, who is difficult to locate within the Jurisdiction.

4.

The appointment of a special process server in this case is to the benefit of all parties and is in the best interest of justice.

5.

Alexandra Denise Dalman is employed as a process server and GA licensed private investigator who specializes in locating and serving difficult to locate defendants; she is a citizen of the United States; she is over 21 years of age; she is not related to plaintiff nor plaintiff's counsel; she is neither an employee of plaintiff nor plaintiff's counsel; she is wholly disinterested in the outcome of this litigation; and she is ready, willing and able to serve the defendants, who are located in Georgia, with the summons and complaint.

6.

A proposed order granting plaintiffs' motion for appointment of a special process server is attached hereto as Exhibit "A."

WHEREFORE, plaintiffs request that the court grant this motion and appoint Alexandra Denise Dalman as special process server to serve the summons and complaint on the defendant in this case.

This 28th Day of August.                                    Respectfully submitted,

                                                            /s/Shandria Brown_____

                                                            Shandria Brown
                                                            Georgia Bar No. 756215
                                                            Attorney for Plaintiffs
                                                            Your Insurance Attorney, PLLC
                                                            3384 Peachtree Rd NE Suite 250
                                                            Atlanta, GA 30326
                                                            888-570-5677 (phone)
                                                            888-881-1075 (facsimile)

🖨 **EFILED IN OFFICE**
CLERK OF SUPERIOR COURT
HOUSTON COUNTY, GEORGIA

**2025V132864L**

**AUG 29, 2025 11:29 AM**

*Terri L Childers*
Terri Childers, Clerk of Superior Court
Houston County, Georgia

**IN THE SUPERIOR COURT OF HOUSTON COUNTY**

**STATE OF GEORGIA**

|  |  |
|---|---|
| MARIE M ETIENNE SEVERE, | CIVIL ACTION FILE NO.: |
| **Plaintiff,** |  |
| v. | 2025V132864L |
| STATE FARM FIRE AND CASUALTY |  |
| COMPANY, |  |
| **a foreign corporation,** |  |
| **Defendant.** |  |

## <u>ORDER</u>

The Plaintiff having moved for an Order of this Court appointing a Special Agent for Service of Process upon the Defendant in the above styled action, and in order to serve the Defendant with Due Diligence, it is hereby ORDERED that Alexandra Dalman, who is a citizen of the United States of America and is over twenty-one (21) years of age is hereby appointed as special agent for Service of Process of the summons and complaint on the Defendant in the above styled action.

SO ORDERED this _29_ day of _Aug_, 2025,

_____

EDWARD D LUKEMIRE, SUPERIOR COURT JUDGE
HOUSTON COUNTY SUPERIOR COURT

Prepared by:
Attorney Shandria Brown

## AFFIDAVIT OF SERVICE

🍎 EFILED IN OFFICE
CLERK OF SUPERIOR COURT
HOUSTON COUNTY, GEORGIA

**2025V132864L**

SEP 09, 2025 01:01 PM

Terri Childers, Clerk of Superior Court
Houston County, Georgia

| Case:<br>2025V132864L | Court:<br>In the Superior Court of Houston County | County:<br>Houston, GA | Job:<br>14107327 |
|---|---|---|---|
| Plaintiff / Petitioner:<br>Marie M Etienne Severe | | Defendant / Respondent:<br>State Farm Fire and Casualty Company | |
| Received by:<br>Fenrir Group | | For:<br>Your Insurance Attorney | |
| To be served upon:<br>State Farm Fire and Casualty Company | | | |

I, Alexandra Dalman, being duly sworn, depose and say: I am over the age of 18 years and not a party to this action, and that within the boundaries of the state where service was effected, I was authorized by law to make service of the documents and informed said person of the contents herein

**Recipient Name / Address:** Corporation Service Company, c/o Alisha Smith, 2 Sun Court Suite 400, Peachtree Corners, GA 30092
**Manner of Service:** Registered Agent, Sep 8, 2025, 12:11 pm EDT
**Documents:** Summons, Complaint, Rule 5.2, Rule 5.2, Plaintiff's First Set of Interrogatories and Plaintiff's First Request for Production to Defendant, Civil Case Filing Information Form

**Additional Comments:**
1) Successful Attempt: Sep 8, 2025, 12:11 pm EDT at 2 Sun Court Suite 400, Peachtree Corners, GA 30092 received by Corporation Service Company, c/o Alisha Smith.

_Alexandra Dalman_    09/09/2025
Alexandra Dalman          Date

Fenrir Group
Decatur, GA

Subscribed and sworn to before me by the affiant who is
personally known to me.

_____
Notary Public

9-9-25    10-23-77
Date          Commission Expires

J. DALMAN
NOTARY PUBLIC
MY COMMISSION EXPIRES
10/23/202_
DEKALB COUNTY,
GEORGIA

⚜ **EFILED IN OFFICE**
CLERK OF SUPERIOR COURT
HOUSTON COUNTY, GEORGIA

**2025V132864L**

OCT 07, 2025 09:21 AM

*Terri L Childers*
Terri Childers, Clerk of Superior Court
Houston County, Georgia

### IN THE SUPERIOR COURT OF HOUSTON COUNTY
### STATE OF GEORGIA

| | |
|---|---|
| MARIE M ETIENNE SEVERE, | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | *  Civil Action No.: |
| | *  2025V132864l |
| STATE FARM FIRE AND CASUALTY | * |
| COMPANY, | * |
| | * |
| a foreign corporation, | * |
| | * |
| Defendant. | * |

### SPECIAL APPEARANCE ANSWER AND DEFENSES OF DEFENDANT
### STATE FARM FIRE AND CASUALTY COMPANY

COMES NOW, State Farm Fire and Casualty Company (hereinafter referred to as "State Farm"), defendant in the above-styled action, and hereby presents the following answer and defenses to plaintiff's complaint. State Farm is responding to plaintiff's complaint by special appearance, without admitting that venue, personal jurisdiction, or subject matter jurisdiction is proper in this Court. Furthermore, State Farm makes this response to plaintiff's complaint subject to and without waiving its right to file a notice of removal to the United States District Court for the Middle District of Georgia, Macon Division, in conformity with Yusefzadeh v. Nelson, Mullins, Riley & Scarborough, LLP, 365 F.3d 1244 (11th CIR. 2004). State Farm is filing this special appearance answer and defenses merely to preserve its defenses and to preserve the status quo.

### FIRST DEFENSE

The complaint fails to state a claim against State Farm upon which relief can be granted.

### SECOND DEFENSE

The venue of this action is improper.

### THIRD DEFENSE

This Court lacks in personam jurisdiction over State Farm.

### FOURTH DEFENSE

This Court lacks subject matter jurisdiction over this action.

### FIFTH DEFENSE

The damaged sued now for are not covered by State Farm Insurance policy number 11-KF-L323-2; therefore plaintiff cannot recover from defendant

### SIXTH DEFENSE

The plaintiff failed to comply with the terms and conditions of State Farm policy number 11-KF-L323-2; therefore, plaintiff cannot recover from defendant.

### SEVENTH DEFENSE

O.C.G.A. § 33-4-6 is the exclusive remedy for an insurer's alleged bad faith conduct. Therefore, plaintiff possesses no claim against State Farm under O.C.G.A. §§ 9-15-14, 13-6-11, and/or 51-12-5.1.  Likewise, plaintiff possesses no claim against State Farm for prejudgment interest.

## EIGHT DEFENSE

The plaintiff cannot recover attorney's fees, litigation expenses, and a bad faith penalty pursuant to O.C.G.A. § 33-4-6 because defendant possessed a bona fide defense to the claim asserted by plaintiff, and defendant has acted in good faith towards plaintiff at all times pertinent hereto.

## NINTH DEFENSE

The plaintiff has not complied with O.C.G.A. § 33-4-6; therefore plaintiff cannot make a recovery under said code section.

## TENTH DEFENSE

### (Responsive Answer)

Subject to and without waiving the foregoing affirmative defenses, State Farm responsively answers the enumerated paragraphs of plaintiff's complaint and the various allegations therein contained as follows:

1.

Based upon information and belief, State Farm admits the allegations contained in paragraph 1 of plaintiff's complaint.

2.

State Farm denies the allegations contained in paragraph 2 of plaintiff's complaint.

3.

State Farm denies the allegations contained in paragraph 3 of plaintiff's complaint.

4.

State Farm denies the allegations contained in paragraph 4 of plaintiff's complaint.

5.

State Farm admits it issued policy number 11-KF-L323-2 to plaintiff for the property located at 500 Arbor Lane, Centerville, Georgia 31028. State Farm further admits it provided certain coverages under said policy, subject to the terms, conditions, limitations, and exclusions contained in said policy. State Farm denies the remaining allegations contained in paragraph 5 of plaintiff's complaint.

6.

State Farm admits that the terms, conditions, and exclusions of policy number 11-KF-L323-2 speak for themselves. State Farm denies the remaining allegations contained in paragraph 6 of plaintiff's complaint.

7.

State Farm admits that on or about August 30, 2025, policy number 11-KF-L323-2 was in full force and effect. State Farm denies the remaining allegations contained in paragraph 7 of plaintiff's complaint.

8.

State Farm admits the plaintiff submitted a claim to it. State Farm denies the remaining allegations contained in paragraph 8 of plaintiff's complaint.

9.

State Farm admits plaintiffs reported a claim to it on September 4, 2024 but denies the remaining allegations contained in the first sentence of paragraph 9 of plaintiff's complaint. State Farm admits the remaining allegations contained in paragraph 9 of plaintiff's complaint.

10.

State Farm denies the allegations contained in paragraph 10 of plaintiff's complaint.

11.

State Farm admits the allegations contained in paragraph 11 of plaintiff's complaint.

12.

State Farm admits its duties and plaintiff's duties are governed by the terms, conditions, limitations, and exclusions to plaintiff are governed by the terms and conditions of State Farm policy number 11-KF-L323-2, which speak for themselves. State Farm denies the remaining allegations contained in paragraph 12 of plaintiff's complaint.

13.

State Farm admits it issued a denial to the plaintiff in accordance with the terms, conditions, limitations, and exclusions of State Farm policy number 11-KF-L323-2. State Farm denies the remaining allegations contained in paragraph 13 of plaintiff's complaint.

14.

State Farm denies the allegations contained in paragraph 14 of plaintiff's complaint.

15.

State Farm denies the allegations contained in paragraph 15 of plaintiff's complaint.

16.

State Farm denies the allegations contained in paragraph 16 of plaintiff's complaint.

17.

State Farm denies the allegations contained in paragraph 17 of plaintiff's complaint.

18.

State Farm denies the allegations contained in paragraph 18 of plaintiff's complaint.

19.

State Farm denies the allegations contained in paragraph 19 of plaintiff's complaint.

**COUNT ONE: BREACH OF CONTRACT**

20.

In response to paragraph 20 of plaintiff's complaint, State Farm reasserts and restates each and every defense, answer and response with reference to paragraphs 1 through 19 of plaintiff's complaint with the same effect as if repeated here, denying each allegation therein unless expressly admitted or specifically

answered otherwise.

21.

State Farm denies the allegations contained in paragraph 21 of plaintiff's complaint.

22.

State Farm denies the allegations contained in paragraph 22 of plaintiff's complaint.

23.

State Farm denies the allegations contained in paragraph 23 of plaintiff's complaint.

24.

State Farm denies the allegations contained in paragraph 24 of plaintiff's complaint.

25.

State Farm denies the allegations contained in paragraph 25 of plaintiff's complaint.

26.

State Farm denies the allegations contained in paragraph 26 of plaintiff's complaint.

27.

State Farm denies the allegations contained in paragraph 27 of plaintiff's complaint.

28.

State Farm denies the allegations contained in paragraph 28 of plaintiff's complaint.

29.

State Farm denies the allegations contained in paragraph 29 of plaintiff's complaint.

## COUNT TWO: BAD FAITH

30.

In response to paragraph 30 of plaintiff's complaint, State Farm reasserts and restates each and every defense, answer and response with reference to paragraphs 1 through 29 of plaintiff's complaint with the same effect as if repeated here, denying each allegation therein unless expressly admitted or specifically answered otherwise.

31.

State Farm denies the allegations contained in paragraph 31 of plaintiff's complaint.

32.

State Farm denies the allegations contained in paragraph 32 of plaintiff's complaint.

33.

State Farm denies the allegations contained in paragraph 33 of plaintiff's complaint.

34.

State Farm denies the allegations contained in paragraph 34 of plaintiff's complaint.

35.

State Farm denies the allegations contained in paragraph 35 of

plaintiff's complaint.

36.

State Farm denies the allegations contained in paragraph 36 of plaintiff's complaint.

37.

State Farm denies the allegations contained in paragraph 37 of plaintiff's complaint.

38.

State Farm denies the allegations contained in paragraph 38 of plaintiff's complaint.

39.

State Farm denies the allegations contained in paragraph 39 of plaintiff's complaint.

40.

State Farm denies the allegations contained in paragraph 40 of plaintiff's complaint.

41.

State Farm denies the allegations contained in paragraph 41 of plaintiff's complaint.

42.

In response to the "WHEREFORE" which follows paragraph 41 of plaintiff's complaint, State Farm denies plaintiff's prayers for relief.

WHEREFORE, having fully answered, State Farm prays that the demands of the plaintiff be denied and that the action be dismissed

on the merits.

This <u>7th</u> day of <u>October</u>, 2025.

**YOUNG, THAGARD, HOFFMAN, LLP**

Address of Counsel:

BY: <u>/s/ J. Holder Smith, Jr</u>.

P. O. Box 3007                       J. Holder Smith, Jr.
Valdosta, GA  31604                  State Bar No. 661105
(229) 242-2520 Telephone             Attorney for Defendant
(229) 242-5040 Facsimile             State Farm Fire and
Email: <u>jaysmith@youngthagard.com</u>   Casualty Company

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this day served a copy of the foregoing **SPECIAL APPEARANCE ANSWER AND DEFENSES OF DEFENDANT STATE FARM FIRE AND CASUALTY COMPANY** upon the following by statutory electronic service using the PeachCourt e-filing system, pursuant to O.C.G.A. § 9-115(f), which will send notification of such filing to the following:

Ms. Shandria Brown
Your Insurance Attorney, PLLC
3384 Peachtree Road NE
Suite 250
Atlanta, GA 30326
yiaga5@yourinsuranceattorney.com

This <u>7th</u> day of <u>October</u>, 2025.

**YOUNG, THAGARD, HOFFMAN, LLP**

Address of Counsel:

BY: <u>/s/ J. Holder Smith, Jr</u>.
P. O. Box 3007                    J. Holder Smith, Jr.
Valdosta, GA  31604               State Bar No. 661105
(229) 242-2520 Telephone          Attorney for Defendant
(229) 242-5040 Facsimile          State Farm Fire and
Email: jaysmith@youngthagard.com  Casualty Company